1  PAUL HASTINGS LLP
   CHRIS A. JALIAN (SB# 295564)
2  chrisjalian@paulhastings.com
   AJA NUNN (SB# 347676)
3  ajanunn@paulhastings.com
   515 South Flower Street
4  Twenty-Fifth Floor
   Los Angeles, California 90071-2228
5  Telephone: (213) 683-6000
   Facsimile: (213) 627-0705
6
   Attorneys for Defendants
7

8

9                UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12 KRISTINE MCKEOWN, an individual,      CASE NO.  3:25-CV-3654-LJC
   on behalf of him/herself and all similarly
13 situated individuals,                 **DECLARATION OF ANDREW
                                         BEROS IN SUPPORT OF
14              Plaintiff(s),            DEFENDANTS SAS RETAIL
                                         SERVICES, LLC, DAYMON
15      vs.                              WORLDWIDE INC., AND
                                         ADVANTAGE SOLUTIONS
16 SAS RETAIL SERVICES, LLC, a           INC.'S MOTION TO COMPEL
                                         ARBITRATION AND DISMISS
17 Delaware Limited Liability Company,   ALL CLAIMS**
   DOES 1-20, inclusive,
18              Defendant(s).            Date:    June 10, 2025
                                         Time:    2:30 pm
19                                       Dept:    G - 15th Floor
                                         Judge:   Lisa J. Cisneros
20
                                         Complaint Filed:  December 17, 2024
21                                       Trial Date:       None Set

22

23

24

25

26

27

28

# DECLARATION OF ANDREW BEROS

I, Andrew Beros, declare and state as follows:

1.    I am over the age of eighteen and have personal knowledge of the facts set forth herein or obtained these facts through competent and reliable personnel employed by SAS Retail Services, LLC ("SAS").  The matters stated herein are based on my own personal knowledge except as to those matters which are stated on information and belief, and as to those matters, I believe them to be true based on my own personal good faith investigation.  If called upon as a witness, I could and would testify competently to these facts.  I submit this Declaration in support of Defendants' Motion to Compel Arbitration and Dismiss Class Claims.

2.    SAS is a retail services company, offering product placement, display design, shelf-stocking, and other services to retail clients throughout the United States.  SAS has worksites in multiple states throughout the United States, including California, Oregon, Washington, Idaho, Texas, Louisiana, Alabama, South Carolina, Virginia, Pennsylvania, Kentucky, Tennessee, Michigan, Illinois, Wisconsin, Iowa, Missouri, Arkansas, Kansas, Nebraska, North Dakota, Nevada, New York, and Georgia, among others.

3.    In my capacity as Senior Director of Human Resources for Advantage Sales & Marketing LLC ("Advantage"), I oversaw and continue to oversee those responsible for maintaining employment policies and personnel files for SAS's employees nationwide.  As such, I am familiar with the application process and how SAS onboards new hires and presents forms and policies to candidates and employees that set forth the terms and conditions of their employment.

4.      I am also familiar with the process in which arbitration agreements are presented to SAS's new hires and employees, how the agreements are reviewed and executed, as well as the contents of the arbitration agreement itself.  Through my job duties, I am also familiar with SAS's recordkeeping procedures involving the preparation and maintenance of its employment policies and agreements.

5.      Defendants SAS, Daymon Worldwide Inc. ("Daymon"), and Advantage Solutions Inc. ("Advantage Solutions") are affiliated entities in the Advantage portfolio.  SAS is a wholly-owned subsidiary of Daymon.  Daymon is a wholly-owned subsidiary of Advantage, which is in turn a wholly-owned subsidiary of Advantage Solutions. As such, prospective employees of SAS execute Advantage's Arbitration Agreement Acknowledgement during the onboarding process.

6.      SAS provides onboarding documents, including the Arbitration Agreement, to prospective employees through SAS's electronic system, Paradox. Paradox is software used by SAS to manage personnel and onboarding documents. Paradox is secured through a user-based permission process which allows only selected authorized employees such as those in Human Resources, Onboarding, and Enterprise Business Solutions to access employees' personnel documents, including those completed in the onboarding process.  As the Senior Director of Human Resources for Advantage Sales & Marketing LLC, I have, and had at all times relevant to this dispute, access to personnel and onboarding documents stored in Paradox, which are maintained by SAS in its regular course of business.

7.      SAS provides access to the offer letters and onboarding documents through Paradox via a link sent to the phone number and email address provided by the prospective employee.  The employee, using the link, gains access to

onboarding documents through Paradox by using a unique two-factor authentication code. Paradox is a secure, cloud-based software. Information provided to prospective employees through Paradox is unique and available only to the individual prospective employee. Onboarding documents are provided only to the prospective employee and only through Paradox at the email address and phone number provided by the employee. Onboarding documents are not provided to prospective employees through any other means, and the prospective employees are unable to execute onboarding documents other than through Paradox using their unique two-factor authentication code, which is provided to each prospective employee directly to the phone number provided by the prospective employee.

8.      Specifically, once a prospective employee has submitted an application and SAS had decided to extend an offer of employment, SAS provides a secure link to the prospective employee to complete and acknowledge new hire paperwork through Paradox. The secure link is sent to the employee's respective email address and phone number, which the employee provides to SAS for purposes of receiving the onboarding documents to review and acknowledge through Paradox. Once the employee clicks on the initial link, they are sent a two-factor authentication code on their phone to open the link to complete their offer letter. Once the offer of employment is accepted, the employee is sent a new link, via text and email, which requests that the employee start the onboarding process. To access the onboarding documents, the employee is sent a two-factor authentication code on their phone to open the link to complete their onboarding documents.

9.      SAS's employees, including those in Human Resources, have no ability to edit the application or onboarding documents that prospective employees complete through Paradox, including the arbitration agreement. In other words, only prospective employees who are executing the onboarding documents have the

ability to input information into the onboarding documents through the process described herein.

10.     SAS transmits onboarding documents to prospective employees through Paradox in a "pick list," which is a list of documents to be completed and acknowledged by the prospective employees in onboarding.  SAS provides the pick list documents to prospective employees only through Paradox, which is accessed by the prospective employees through their unique two-factor authentication code sent to the phone number the prospective employees provide.  This is the only manner through which SAS transmits such onboarding documents to prospective employees, and the only manner through which prospective employees may access onboarding documents.  This was the process through which the onboarding documents were provided to Ms. McKeown.

11.     The documents included in the pick list are provided in static image format, similar to a PDF, the contents of which cannot be edited or deleted except by the reviewing employee's manipulation.  For instance, the Arbitration Agreement has a "check box" where the employee can manipulate the field to acknowledge the prospective employee's agreement to the terms of the document. To that end, the select fields in the documents can only be manipulated by the reviewing prospective employee that logged into Paradox using their unique two-factor authentication code.

12.     The information inputted by the employee is then saved in Paradox's cloud-based server at the time the documents are completed.  The date and time of acknowledgment – i.e., electronic execution of the documents in the pick list – are reflected on the onboarding documents created by the employee at the time of

completion. The date and time of acknowledgment are also recorded internally by Paradox.

13.     SAS emailed and texted Ms. McKeown a secure link and a unique two-factor authentication code so that she could access the onboarding documents, including the Arbitration Agreement. Ms. McKeown could only access, review, and execute the onboarding documents by logging into Paradox using her unique two-factor authentication code that was generated and provided only to her. Upon logging into Paradox, Ms. McKeown had access to the onboarding documents for review and acknowledgment. By checking the box which is located at the end of the Arbitration Agreement, Ms. McKeown consented to be bound by the terms of the Arbitration Agreement.

14.     The information inputted and documents completed by prospective employees, including Ms. McKeown, are saved contemporaneously at the time the documents are completed. If the employee provides inaccurate information on a document, SAS has no means to manipulate the information or to correct it. SAS can only "push" the document back to the employee to be revised. Thus, onboarding documents can only be completed by the employee, and no one else.

15.     Because the prospective employee's information and execution of the documents is saved contemporaneously at the time the documents are completed, the date and time reflected on the onboarding document printout is the date and time at which the documents are executed.

16.     As the Senior Director of Human Resources, I have access to and have reviewed SAS's electronic system, including Paradox, where onboarding information, including employees' Arbitration Agreements are tracked and stored.

I also have access to company records that are kept in the regular course of business, including but not limited to employees' personnel records, onboarding documents, hiring documents, and employment records.

17.    I have reviewed Ms. McKeown's personnel file in connection with this litigation.  Based on my review of Ms. McKeown's personnel file, which is kept and maintained by SAS in the regular course of business, it is my understanding that SAS has employed Ms. McKeown as a Traveling Retail Merchandiser from on or about April 17, 2024, to present.

18.    Attached hereto as **Exhibit A** is a true and correct copy of a letter from Ms. McKeown's file which shows that on April 11, 2024, at 7:10 a.m. EST, SAS electronically transmitted an offer letter to Ms. McKeown.  The offer letter was sent to Ms. McKeown's email address, kristinemckeown47@gmail.com, and phone number, (442) 373-5777, which she provided to SAS for the purpose of receiving her offer letter and onboarding documents.

19.    Ms. McKeown electronically signed her offer letter on April 11, 2024, at 11:10 a.m. EST.  Ms. McKeown's electronic signature is shown in **Exhibit A**.

20.    Attached hereto as **Exhibit B** is a true and correct copy of the Arbitration Agreement executed by Ms. McKeown.

21.    The date and time of Ms. McKeown's execution of the Arbitration Agreement, as well as other onboarding documents, was also contemporaneously recorded in SAS's Bulk Print summary, which is generated by Paradox and maintained by SAS in its ordinary and regular course of business.  The Bulk Print summary evidences Ms. McKeown executed the Arbitration Agreement on April

11, 2024, at 5:04 p.m. MST (or 7:04 p.m. EST).  A true and correct copy of SAS' Bulk Print summary, which shows Ms. McKeown's electronic signature for various onboarding documents, is attached hereto as **Exhibit C**.

22.     During her initial onboarding process, Ms. McKeown failed to complete her Form I-9.  As a result, Ms. McKeown had to reapply for the Traveling Retail Merchandiser position and re-acknowledge her Arbitration Agreement and other onboarding documents.

23.     Attached hereto as **Exhibit D** is a true and correct copy of a letter from Ms. McKeown's file which shows that on April 17, 2024, at 12:51 p.m. EST, SAS electronically transmitted a second offer letter to Ms. McKeown.  The second offer letter was also sent to Ms. McKeown's email address, kristinemckeown47@gmail.com, and phone number, (442) 373-5777.

24.     Attached hereto as **Exhibit E** is a true and correct copy of a screenshot from Ms. McKeown's file which shows that on April 17, 2024, at 1:50 p.m. EST, SAS sent a message via Paradox that followed up on her offer of employment.  In the message is the secure link that Ms. McKeown used to access her offer letter through Paradox.  This message was sent to Ms. McKeown's email address, kristinemckeown47@gmail.com, and phone number, (442) 373-5777.  Because Exhibit E was pulled by an employee in the Eastern Standard Time zone, the time reflected in Exhibit E is also in Eastern Standard Time.

25.     Ms. McKeown electronically signed her offer letter on April 25, 2024, at 2:58 p.m. EST.  Ms. McKeown's electronic signature is shown in **Exhibit D**.

26.     The date and time of Ms. McKeown's second execution of the Arbitration Agreement, as well as other onboarding documents, was also contemporaneously recorded in a second Bulk Print summary.  The second Bulk Print summary evidences Ms. McKeown executed the Arbitration Agreement again on April 25, 2024, at 1:21 p.m. MST (or 3:21 p.m. EST).  A true and correct copy of the second Bulk Print summary, which shows Ms. McKeown's electronic signature for various onboarding documents, is attached hereto as **Exhibit F**.

27.     The Consent to Use Electronic Signatures contained in **Exhibits C** and **F** provide: "While using this online platform, you will be asked to access, review, sign and agree to or authenticate certain statements, terms and conditions, or documents.  In electing to use this online platform you agree and consent to the use of Electronic Signature.  Furthermore, you acknowledge that Electronic Signature is a lawful means of obtaining your signature and that your intent is for it to have the legal equivalent of your handwritten (or wet) signature.  'Electronic Signature' shall mean your use of a device to select a button or take an action to demonstrate your acknowledgment and/or consent to any terms, conditions, statements, or disclosures.  You agree that no certification authority or other third-party verification is necessary to validate this Electronic Signature and that the lack of such certification or third-party verification shall not in any way affect the enforceability of this Electronic Signature."  Ms. McKeown originally accepted the Consent to use Electronic Signatures on April 11, 2024, at 4:20 p.m. MST (or 6:20 p.m. EST), prior to executing her first round of onboarding documents and forms.  Ms. McKeown accepted the Consent to use Electronic Signatures for a second time on April 25, 2024, at 1:09 p.m. MST (or 3:09 p.m. EST), prior to re-executing any other onboarding documents and forms.

28.     Based on my personal knowledge of the design and operation of SAS's electronic system, including the Paradox platform and how prospective employees access onboarding documents including the Arbitration Agreement, the contents of **Exhibits A** through **F** evidence that Ms. McKeown had access to, reviewed, acknowledged, and e-signed the Arbitration Agreement that was sent to her on multiple occasions.  Based on the foregoing and upon information and belief, Ms. McKeown checked the boxes on the Arbitration Agreement, which caused her name, date, and time to be recorded by the Paradox platform and shown in the Bulk Print summary.

29.     It is SAS's policy and procedure to give employees, including Ms. McKeown, ample time to review and understand all the onboarding documents provided, including the Agreement.

30.     Furthermore, employee documents, including those of Ms. McKeown, are inputted, stored, and retrieved from Paradox such that there is no potential for the documents to be manipulated or misplaced.  The documents attached hereto as **Exhibits A** through **F** are kept, maintained, and generated through Paradox by SAS in its regular course of business.  Also, as noted, the documents are stored and saved on Paradox at the time they are created by prospective employees, including the documents electronically signed and executed by Ms. McKeown.

31.     If employees, including Ms. McKeown, had any questions regarding the Arbitration Agreement or any other employment document during the on-boarding process, the employee's supervisor or another employee from SAS's Human Resources department were available to address the employee's specific question or concern.

32.     There is no record that Ms. McKeown has asked any questions related to the Arbitration Agreement at any point during her employment with SAS.  After signing the Agreement on multiple occasions, Ms. McKeown has continued her employment with SAS under the conditions of the Agreement.

33.     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this __1st_ day of May, 2025, at _San Diego__, California.

_____
ANDREW BEROS

# EXHIBIT A

Dear **Kristine**,

It is a pleasure to offer you this position of **Traveling Retail Merchandiser** with **Advantage Solutions, Inc.**. The Company offers its associates the chance to excel and we want to take this opportunity to congratulate you on this offer of employment and to express our hope that you will be able to join us.

Below are highlights of the initial terms of your employment if hired (subject to periodic review and change, as permitted by law):

  • Title: **Traveling Retail Merchandiser**
  • TENTATIVE START DATE: April 11, 2024 .

(if you meet the position requirements you will be notified in writing on confirmation of your actual start date)

PAY RATE: Subject to any applicable overtime and minimum wage requirements, pay rates are as follows

  • ON-SITE and ADMIN PAY RATE 1: $16.00 / per hour . Pay Rate 1 applies to time spent performing any work-related tasks for the Company (including in-store and administrative time).

  • EXEMPTION STATUS: **Non-Exempt**
  • POSITION CATEGORY: **Regular**
  • POSITION TYPE: Part Time
  • SUPERVISOR:  Desiree Escanuela

*The On-Site rate for this position is referred to as "Regular" on your earnings statement. This is simply a coding term used by payroll and does not impact the calculation of your regular rate of pay or overtime.

Please note that the rates of pay above will apply to all work you perform for the Company in the position noted above. If you currently also hold a different position, the rates of pay in effect for that position will continue to apply to work that you perform in that position going forward (unless you are notified of a different rate in writing). Further, if you are offered any future positions with the Company, you will be advised of the applicable rate(s) of pay at the time any such position is offered to you. As with all terms and conditions of employment with the Company, rates of pay are subject to change, at any time, with or without notice or cause, subject to applicable law.

## PART-TIME BENEFITS: US

## OTHER POLICIES & PROCEDURES / TERMS SUBJECT TO CHANGE

Employment with the Company is subject to its policies and procedures including, without limitation, those set forth in the Associate Handbook and the Code of Business Conduct & Ethics, copies of which are made available to you as part of the on-boarding process and (if hired) during employment through the policies and procedures page of the Company's internal website, one's supervisor, and the Human Resources Department. Upon hire, you can also find legally required notices (such as those required under state or local law) using the above link to the Company's policies and procedures site.

The terms and conditions of employment, including without limitation, compensation and benefits, are subject to change at any time with or without notice or cause, as permitted by law. By accepting an offer of employment with the Company, you agree to comply with all such policies and procedures (and any changes thereto) if hired.

## SATISFACTORY COMPLETION OF EMPLOYMENT REQUIREMENTS

Employment and the start date noted above are contingent upon your satisfactory completion of all employment-related requirements prior to and/or anytime during employment (subject to applicable law). Failure to satisfy any of these obligations could result in withdrawal of your employment offer or termination (if hired).

For the position identified above, these requirements include the following:

- Timely and satisfactory completion of all new hire paperwork.
- Timely and proper completion of the Federal I-9 form, which includes making available for review original documentation establishing your identity and employment eligibility (in accordance with the I-9 List of Acceptable Documents).

Certain positions also include satisfactory completion of one or more of the requirements identified below, subject to applicable law, as a condition of employment due to the nature of the position. If you are offered the position, you will be provided with the necessary paperwork.

- Background check
- Drug screening(s)
- Auto-program requirements

- Motor vehicle record check
- Proof of valid driver's license
- Reliable access to an operating vehicle (as needed to perform job duties)
- Valid auto insurance coverage (as required for position)

## BACKGROUND CHECK AND/OR DRUG & ALCOHOL TESTING

Prior to and/or anytime during employment (if hired), the Company may require you to submit to and satisfy a background check (including, without limitation, a criminal history and/or motor vehicle record check) and/or drug and alcohol testing, subject to applicable law. Failure to satisfy any of these requirements, if and as required as a condition of employment, may lead to withdrawal of any offer of employment or termination of employment if hired. If you are required to submit to one or more of these screening, you will be provided with additional materials by which you may obtain information about the nature and/or scope of the procedures, investigations, and/or results; and authorize release of the information and/or results to the Company, to the extent required by applicable law.

## PERFORMANCE OF JOB DUTIES AND REASONABLE ACCOMMODATIONS

Offers of employment with the Company are contingent on an individual's being able to perform the essential functions of the job with or without a reasonable accommodation. If the Company determines through an interactive process that you are unable to perform the essential job duties with or without a reasonable accommodation, your employment offer may be withdrawn or employment may be terminated, if hired. If you believe you would need an accommodation to perform the essential duties of the position you are being offered, you may contact ASM's Workplace Accommodation's Dept. Phone: 888-985-0349 or Email: workplaceaccommodations@asmnet.com to request an accommodation so that your request can be carefully reviewed and evaluated. (Please note that reasonable accommodations are not limited to leaves of absence.) While the Company cannot guarantee that all such requests will be granted, our Company is committed to providing reasonable accommodations to enable qualified individuals with known disabilities to participate in the application process, perform the essential job duties, and to equally enjoy the benefits and privileges of employment, as required by law.

## NO PRIOR OBLIGATIONS IN CONFLICT WITH EMPLOYMENT WITH THE COMPANY

By signing below and accepting this offer of employment, you represent and agree that; (a) your employment with the Company (if hired) and compliance with the terms and conditions of such employment will not conflict with or result in the breach by you of any agreement to which you are a party or by which you may be bound, (b) you have not, and in connection with your employment with the Company (if hired) will not, violate any non-competition, non-solicitation or other similar covenant or agreement by which you are or may be bound, and (c) in connection

with your employment with the Company (if hired) you will not use any confidential or proprietary information you may have obtained in connection with employment with any prior employer (other than the Company and its affiliated entities prior to the date of your future employment with the Company, if hired).

## AT-WILL EMPLOYMENT

We look forward to your joining the Company and becoming a member of our team. However, we recognize that if you become an associate of the Company you would retain the option, as would the Company, of ending your employment with the Company at any time, with or without notice or cause. As such, your employment with the Company (if hired) is "at-will". Neither this letter nor any oral or written representations constitute a contract or guarantee of employment for any specific period of time nor alter the "at-will" nature of employment which can only be modified in a writing signed by the Chief Executive Officer.

## OFFER ACCEPTANCE

By signing this offer letter below, I accept this offer of employment on the terms outlined above and acknowledge that my employment with the Company will be on an at-will basis.

## ELECTRONIC SIGNATURE

I agree, and it is my intent, to sign this document, the Offer Letter, by clicking the "accept" button and by electronically submitting this document to Advantage Solutions. I understand that my signing and submitting this document in this fashion is the legal equivalent of having placed my handwritten signature on the submitted document.

Again, and on behalf of all our associates, congratulations on this offer!

Sincerely,
The **Advantage Solutions, Inc.** recruiting team

---

 Offer History

 **Kristine McKeown Accepted**
Apr 11, 2024 at 11:10 AM

 **Alix Sent**
Apr 11, 2024 at 07:10 AM

# EXHIBIT B

# Arbitration Agreement Acknowledgement

**MUTUAL AGREEMENT TO ARBITRATE CLAIMS**

It is not uncommon for disputes to arise between an employer and an employee. Arbitration is a speedy, impartial and cost-effective way to resolve these disputes. For this reason, except as otherwise provided in this Mutual Agreement to Arbitrate Claims ("Agreement"), you and Advantage Sales & Marketing LLC (hereinafter, the "Company") agree to resolve in binding arbitration all claims or controversies ("Claims") that the Company may have against you, or that you (and no other party) may have against any of the following: (1) the Company, (2) the Company's parents, subsidiaries and affiliated entities, including but not limited to Daymon Worldwide Inc. (hereinafter, "Affiliated Entities"), (3) the Company's and its Affiliated Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, (4) all clients and/or customers of the Company or its Affiliated Entities, (5) the officers, directors, employees or agents of the Company, the Affiliated Entities, and clients and/or customers, in their capacity as such or otherwise, and (6) all successors and assigns of any of them. Under this Agreement, any Claims will be decided by an arbitrator rather than by a judge or jury. Both you and the Company may seek to enforce this Agreement.

For purposes of this Agreement, Claims include, but are not limited to, all statutory, contractual and/or common law claims including, but not limited to, claims arising under Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act; the Equal Pay Act of 1963; the California Fair Employment and Housing Act; the California Labor Code; the Fair Labor Standards Act; the Americans with Disabilities Act; and other federal, state and local employment laws. Both you and the Company may seek to enforce this Agreement.

The Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. To the extent that the Federal Arbitration Act is inapplicable, the arbitration law of the state in which you primarily work (or last worked) for the Company shall apply.

Claims Not Covered by this Agreement

This Agreement does not apply to:

- Workers' Compensation or Unemployment Insurance claims;
- Claims which under the law (after application of Federal Arbitration Act preemption principles) cannot be compelled to arbitration;
- Claims under an employee pension or benefit plan, the terms of which contain its own arbitration or claims review procedure;
- Claims covered by an applicable collective bargaining agreement;
- Claims of employees with written employment agreements that contain arbitration provisions covering the claim(s) asserted;
- Any claim involving your rights that currently is pending in litigation in any forum.

Further, this Agreement does not limit either party's right, where applicable, to file a claim with, recover through, or participate in an investigative proceeding of, any federal, state, or local governmental agency, such as the California Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, or the National Labor Relations Board.

Arbitration Procedures

The party seeking arbitration must initiate arbitration proceedings by filing a written demand for arbitration with the alternative dispute resolution provider known as JAMS. The arbitration shall take place in the county (or comparable governmental unit) in which you primarily work (or last worked) for

the Company, and no dispute affecting your rights or responsibilities shall be adjudicated in any other venue or forum. The parties shall attempt in good faith to agree on an arbitrator. In the event no agreement can be reached, the arbitrator shall be appointed in accordance with the JAMS Employment Arbitration Rules ("JAMS Rules"), and no other set of JAMS rules, in effect at the time the Claim is submitted. The arbitration will be administered by JAMS and conducted in accordance with the rules and procedures provided by the JAMS Rules in effect at the time the Claim is submitted. Those rules are available at http://www.jamsadr.com/rules-employment-arbitration/ The Company will provide you with a printed copy of the rules upon request. If you are the party initiating the claim, you should do so by submitting to JAMS or the Company a sum equal to the filing fee in the court of general jurisdiction where you work or last worked for the Company. Other than that, where required by law, Company shall pay all costs peculiar to the arbitration to the extent such costs would not otherwise be incurred in a court proceeding, and you shall not be required to pay any type or amount of expense if such requirement would invalidate this agreement or would otherwise be contrary to the law as it exists at the time of the arbitration. The parties shall be entitled to engage in discovery in accordance with the JAMS Rules. In all circumstances the arbitrator shall have the authority to order such discovery, by way of deposition, interrogatory, document production or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issue in dispute, consistent with the expedited nature of arbitration.

The Arbitrator shall apply the substantive law (and the law of remedies, if applicable, including the law of prevailing-party attorney's fees) of the state in which the claim arose, or federal law, or both, as applicable to the claim(s) asserted.

Claims must be brought by either you or Company in your or its individual capacity, not as plaintiffs or class members in any purported class or collective proceeding, and the arbitrator shall not have the power to hear the arbitration or award relief as a class or collective action. Both you and Company waive the right to bring, maintain, participate in, or receive money from any class or collective proceeding. Notwithstanding any provision of the JAMS Rules, a court of competent jurisdiction (and not an arbitrator) shall resolve any dispute about the application or enforceability of any provision of this paragraph.

Award

The decision of the arbitrator shall be final and binding upon the parties. The arbitrator will issue a written decision including the essential findings and conclusions on which the award is based. The arbitrator may award any form of remedy or relief that would be available if a court heard and decided the same Claim

Consideration

Company and you promise to resolve Claims by arbitration as presented in this Agreement. These mutual promises are consideration for each other.

Termination, Modification and Revocation

This Agreement shall survive the employer-employee relationship between the parties and shall apply to any covered Claim whether or not it arises or is asserted during or after termination of employment. This Agreement can be modified or revoked only by a document signed by you and the Company CEO.

Sole and Entire Agreement

This is the complete agreement of the parties on the subject of arbitration of covered Claims. This Agreement supersedes any prior or contemporaneous oral or written agreement or understanding on the subject, except that if for any reason this Agreement is held to be unenforceable, then any prior arbitration agreement you may have with the Company or the Affiliated Entities shall survive. It is agreed and understood that neither party is relying on any representation, oral or written, on the subject

of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement. Each party understands and fully agrees to all of the foregoing.

Severability

If any part of this Agreement is found to be void or unenforceable, that part will be severed and eliminated, and the rest of this Agreement will remain in full force, so that the parties' mutual desire to create a binding agreement to arbitrate will be fulfilled.

Bellwether Arbitration Procedures

Notwithstanding any provision of the JAMS Rules, these bellwether arbitration procedures shall be used when more than 10 cases pending at the same time present substantially similar or overlapping allegations of fact or law.  A court of competent jurisdiction, and not JAMS or an arbitrator, shall resolve any dispute over whether these bellwether procedures apply to any group of claims.

Purpose and Rationale

A large number of arbitration cases with similar allegations will impose excessive transaction costs regardless of the cases' merit or lack of merit.  It also is logistically difficult or impossible to arbitrate simultaneously large numbers of substantially similar cases.  The parties therefore agree to use bellwether litigation procedures similar to those that courts use in mass-tort cases, based on the judiciary's experience that, after one or a few cases are tried to verdict, most or all of the other cases settle or otherwise resolve themselves.

Procedures

To the maximum extent permitted by law, no more than 10 cases will be active at any one time.  All remaining cases will be stayed, with the statute of limitations tolled.  As soon as one of the original active cases is resolved (by decision, settlement, or otherwise), a stayed arbitration shall replace it on the list of 10 active cases.  Except as provided below, cases shall be placed on or moved to the active list in the order demands for arbitration are first received.  Until a case is on or is moved to the list of 10 active cases, the sum the Employee paid to initiate a case shall be refunded, and the Company shall have no obligation to pay any JAMS or arbitrator fees.

Hardship

If Employee claims unusual hardship from any delay pursuant to the bellwether procedure, Employee may petition the Company to waive the 10-case limit for that case.  If the Company does not agree, Employee may petition JAMS to place Employee's case on the list of 10 active cases, on the ground that delay will impose exceptional hardship.  If JAMS finds unusual hardship and grants Employee's petition, JAMS shall (based on its determination of relative hardship) remove one other case from the list of 10 active cases and place it at the head of the list of stayed cases. Under no circumstances shall JAMS place more than 10 cases into active status. If more than 10 hardship applications are granted, JAMS shall determine which 10 cases shall proceed first, based on its determination of relative hardship.

IMPORTANT: THIS IS AN AGREEMENT TO ARBITRATE ALL CLAIMS.  PLEASE READ CAREFULLY BEFORE SIGNING.

# EXHIBIT C

## SASBG-California

Kristine McKeown
Lynwood, CA, 90262 - Field Based

---

**Consent to use Electronic Signatures**

While using this online platform, you will be asked to access, review, sign and agree to or authenticate certain statements, terms and conditions, or documents. In electing to use this online platform you agree and consent to the use of Electronic Signature.

Furthermore, you acknowledge that Electronic Signature is a lawful means of obtaining your signature and that your intent is for it to have the legal equivalent of your handwritten (or wet) signature.

"Electronic Signature" shall mean your use of a device to select a button or take an action to demonstrate your acknowledgment and/or consent to any terms, conditions, statements, or disclosures. You agree that no certification authority or other third-party verification is necessary to validate this Electronic Signature and that the lack of such certification or third-party verification shall not in any way affect the enforceability of this Electronic Signature.

**Kristine McKeown Accepted Consent to use Electronic Signatures April 11, 2024 at 12:21 p.m. MST**

## Tax Withholding

| W4101 Form | https://ai-advantageprod-static.s3.amazonaws.com/media/mm |
|---|---|
| | Kristine McKeown completed April 11, 2024 at 4:20 p.m. MST |
| | Kristine McKeown signed April 11, 2024 at 4:20 p.m. MST |

| CA101 Form | https://ai-advantageprod-static.s3.amazonaws.com/media/mm |
|---|---|
| | Kristine McKeown completed April 11, 2024 at 4:15 p.m. MST |
| | Kristine McKeown signed April 11, 2024 at 4:15 p.m. MST |

## Payroll Information

---

**Direct Deposit Instructions**

Please make sure that the information you provide is correct as direct deposit will begin on your first payroll.  By entering in your account, you are authorizing us to electronically transmit funds into your account and if necessary, make adjustments to such transmissions. You are authorizing us to do so solely for the purposes of processing payroll and/or expense reimbursements. <br> If depositing to a savings account, ask your bank to give you the Routing/Transit Number for your account. It isn't always the same as the number on a savings deposit slip. This will help ensure that you are paid correctly. 

| Payment Method | Direct Deposit |
|---|---|

## Documents to Review

| | |
|---|---|
| Arbitration Agreement Acknowledgement | https://d25m2ntj5edza4.cloudfront.net/media/form-documents<br>Kristine McKeown Viewed April 11, 2024 at 5:04 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:04 p.m. MST |
| Agreement Regarding Confidentiality,Non-Solicitation And Other Matters Non-CA, Non-NJ, Non-WA | https://d25m2ntj5edza4.cloudfront.net/media/form-documents<br>Kristine McKeown Viewed April 11, 2024 at 5:04 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:04 p.m. MST |
| SAS Associate Field Guide | https://d25m2ntj5edza4.cloudfront.net/media/form-documents<br>Kristine McKeown Viewed April 11, 2024 at 5:04 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:04 p.m. MST |
| Advantage Solutions U.S. Associate Handbook | https://d25m2ntj5edza4.cloudfront.net/oms/000000/document<br>Kristine McKeown Viewed April 11, 2024 at 5:04 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:04 p.m. MST |
| Associate Handbook Acknowledgement Form | https://d25m2ntj5edza4.cloudfront.net/media/form-documents<br>Kristine McKeown Viewed April 11, 2024 at 5:04 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:04 p.m. MST |
| Code of Business Conduct and Ethics | https://d25m2ntj5edza4.cloudfront.net/media/form-documents<br>Kristine McKeown Viewed April 11, 2024 at 5:04 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:05 p.m. MST |
| Code of Business Conduct and Ethics Acknowledgement | https://d25m2ntj5edza4.cloudfront.net/media/form-documents<br>Kristine McKeown Viewed April 11, 2024 at 5:05 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:05 p.m. MST |
| Sexual and Other Unlawful Harassment Policy | https://d25m2ntj5edza4.cloudfront.net/media/form-documents<br>Kristine McKeown Viewed April 11, 2024 at 5:05 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:05 p.m. MST |
| Sexual and Other Unlawful Harassment Policy Acknowledgement | https://d25m2ntj5edza4.cloudfront.net/media/form-documents<br>Kristine McKeown Viewed April 11, 2024 at 5:05 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:05 p.m. MST |
| FCRA Summary of Rights | https://d25m2ntj5edza4.cloudfront.net/media/form-documents<br>Kristine McKeown Viewed April 11, 2024 at 5:05 p.m. MST<br>Kristine McKeown accepted digital consent April 11, 2024 at 5:05 p.m. MST |

Notice to Disclosure

> https://d25m2ntj5edza4.cloudfront.net/media/form-documents

Kristine McKeown Viewed April 11, 2024 at 5:05 p.m. MST
Kristine McKeown accepted digital consent April 11, 2024 at 5:05 p.m. MST

Authorization to Obtain Consumer
Report

> https://d25m2ntj5edza4.cloudfront.net/media/form-documents

Kristine McKeown Viewed April 11, 2024 at 5:05 p.m. MST
Kristine McKeown accepted digital consent April 11, 2024 at 5:05 p.m. MST

CA Disclosure Acknowledgement
Form

> https://d25m2ntj5edza4.cloudfront.net/oms/A00N89BL0Y_1677

Kristine McKeown Viewed April 11, 2024 at 5:05 p.m. MST
Kristine McKeown accepted digital consent April 11, 2024 at 5:06 p.m. MST

State Law Notices

> https://d25m2ntj5edza4.cloudfront.net/oms/PBC28IPDZ4_1677

Kristine McKeown Viewed April 11, 2024 at 5:06 p.m. MST
Kristine McKeown accepted digital consent April 11, 2024 at 5:06 p.m. MST

Drug and Alcohol Policy

> https://d25m2ntj5edza4.cloudfront.net/oms/000000/document

Kristine McKeown Viewed April 11, 2024 at 5:06 p.m. MST
Kristine McKeown accepted digital consent April 11, 2024 at 5:06 p.m. MST

# EXHIBIT D

Dear **Kristine**,

It is a pleasure to offer you this position of **Traveling Retail Merchandiser** with **Advantage Solutions, Inc.**. The Company offers its associates the chance to excel and we want to take this opportunity to congratulate you on this offer of employment and to express our hope that you will be able to join us.

Below are highlights of the initial terms of your employment if hired (subject to periodic review and change, as permitted by law):

- Title: **Traveling Retail Merchandiser**
- TENTATIVE START DATE: April 17, 2024 .

(if you meet the position requirements you will be notified in writing on confirmation of your actual start date)

PAY RATE: Subject to any applicable overtime and minimum wage requirements, pay rates are as follows

- ON-SITE and ADMIN PAY RATE 1: $16.75 / per hour . Pay Rate 1 applies to time spent performing any work-related tasks for the Company (including in-store and administrative time).

- EXEMPTION STATUS: **Non-Exempt**
- POSITION CATEGORY: **Regular**
- POSITION TYPE: Part Time
- SUPERVISOR:  Desiree Escanuela

*The On-Site rate for this position is referred to as "Regular" on your earnings statement. This is simply a coding term used by payroll and does not impact the calculation of your regular rate of pay or overtime.

Please note that the rates of pay above will apply to all work you perform for the Company in the position noted above. If you currently also hold a different position, the rates of pay in effect for that position will continue to apply to work that you perform in that position going forward (unless you are notified of a different rate in writing). Further, if you are offered any future positions with the Company, you will be advised of the applicable rate(s) of pay at the time any such position is offered to you. As with all terms and conditions of employment with the Company, rates of pay are subject to change, at any time, with or without notice or cause, subject to applicable law.

## PART TIME BENEFITS: US

## OTHER POLICIES & PROCEDURES / TERMS SUBJECT TO CHANGE

Employment with the Company is subject to its policies and procedures including, without limitation, those set forth in the Associate Handbook and the Code of Business Conduct & Ethics, copies of which are made available to you as part of the on-boarding process and (if hired) during employment through the policies and procedures page of the Company's internal website, one's supervisor, and the Human Resources Department. Upon hire, you can also find legally required notices (such as those required under state or local law) using the above link to the Company's policies and procedures site.

The terms and conditions of employment, including without limitation, compensation and benefits, are subject to change at any time with or without notice or cause, as permitted by law. By accepting an offer of employment with the Company, you agree to comply with all such policies and procedures (and any changes thereto) if hired.

## SATISFACTORY COMPLETION OF EMPLOYMENT REQUIREMENTS

Employment and the start date noted above are contingent upon your satisfactory completion of all employment-related requirements prior to and/or anytime during employment (subject to applicable law). Failure to satisfy any of these obligations could result in withdrawal of your employment offer or termination (if hired).

For the position identified above, these requirements include the following:

- Timely and satisfactory completion of all new hire paperwork.
- Timely and proper completion of the Federal I-9 form, which includes making available for review original documentation establishing your identity and employment eligibility (in accordance with the I-9 List of Acceptable Documents).

Certain positions also include satisfactory completion of one or more of the requirements identified below, subject to applicable law, as a condition of employment due to the nature of the position. If you are offered the position, you will be provided with the necessary paperwork.

- Background check
- Drug screening(s)
- Auto-program requirements

- Motor vehicle record check
- Proof of valid driver's license
- Reliable access to an operating vehicle (as needed to perform job duties)
- Valid auto insurance coverage (as required for position)

## BACKGROUND CHECK AND/OR DRUG & ALCOHOL TESTING

Prior to and/or anytime during employment (if hired), the Company may require you to submit to and satisfy a background check (including, without limitation, a criminal history and/or motor vehicle record check) and/or drug and alcohol testing, subject to applicable law. Failure to satisfy any of these requirements, if and as required as a condition of employment, may lead to withdrawal of any offer of employment or termination of employment if hired. If you are required to submit to one or more of these screening, you will be provided with additional materials by which you may obtain information about the nature and/or scope of the procedures, investigations, and/or results; and authorize release of the information and/or results to the Company, to the extent required by applicable law.

## PERFORMANCE OF JOB DUTIES AND REASONABLE ACCOMMODATIONS

Offers of employment with the Company are contingent on an individual's being able to perform the essential functions of the job with or without a reasonable accommodation. If the Company determines through an interactive process that you are unable to perform the essential job duties with or without a reasonable accommodation, your employment offer may be withdrawn or employment may be terminated, if hired. If you believe you would need an accommodation to perform the essential duties of the position you are being offered, you may contact ASM's Workplace Accommodation's Dept. Phone: 888-985-0349 or Email: workplaceaccommodations@asmnet.com to request an accommodation so that your request can be carefully reviewed and evaluated. (Please note that reasonable accommodations are not limited to leaves of absence.) While the Company cannot guarantee that all such requests will be granted, our Company is committed to providing reasonable accommodations to enable qualified individuals with known disabilities to participate in the application process, perform the essential job duties, and to equally enjoy the benefits and privileges of employment, as required by law.

## NO PRIOR OBLIGATIONS IN CONFLICT WITH EMPLOYMENT WITH THE COMPANY

By signing below and accepting this offer of employment, you represent and agree that; (a) your employment with the Company (if hired) and compliance with the terms and conditions of such employment will not conflict with or result in the breach by you of any agreement to which you are a party or by which you may be bound, (b) you have not, and in connection with your employment with the Company (if hired) will not, violate any non-competition, non-solicitation or other similar covenant or agreement by which you are or may be bound, and (c) in connection

with your employment with the Company (if hired) you will not use any confidential or proprietary information you may have obtained in connection with employment with any prior employer (other than the Company and its affiliated entities prior to the date of your future employment with the Company, if hired).

## AT-WILL EMPLOYMENT

We look forward to your joining the Company and becoming a member of our team. However, we recognize that if you become an associate of the Company you would retain the option, as would the Company, of ending your employment with the Company at any time, with or without notice or cause. As such, your employment with the Company (if hired) is "at-will". Neither this letter nor any oral or written representations constitute a contract or guarantee of employment for any specific period of time nor alter the "at-will" nature of employment which can only be modified in a writing signed by the Chief Executive Officer.

## OFFER ACCEPTANCE

By signing this offer letter below, I accept this offer of employment on the terms outlined above and acknowledge that my employment with the Company will be on an at-will basis.

## ELECTRONIC SIGNATURE

I agree, and it is my intent, to sign this document, the Offer Letter, by clicking the "accept" button and by electronically submitting this document to Retail Odyssey. I understand that my signing and submitting this document in this fashion is the legal equivalent of having placed my handwritten signature on the submitted document.

Again, and on behalf of all our associates, congratulations on this offer!

Sincerely,
The **Advantage Solutions, Inc.** recruiting team

---

## Offer History


**Kristine McKeown Accepted**
Apr 25, 2024 at 02:58 PM


**Alix Sent**
Apr 17, 2024 at 12:51 PM

# EXHIBIT E



# Kristine McKeown

## Conversation

⟲— Send Offer

Hi Kristine! We're excited to move you forward in our process. Please respond to your offer for Traveling Retail Merchandiser at https://advantage.paradox.ai/BK9kkdG.



Apr 17, 2024 at 1:50 PM

Reminder: Please respond to your offer for Traveling Retail Merchandiser at https://advantage.paradox.ai/BK9kkdG.

# EXHIBIT F

## SASBG-California
Kristine McKeown
Bell Gardens, CA, 90201 - Field Based

**Consent to use Electronic Signatures**

While using this online platform, you will be asked to access, review, sign and agree to or authenticate certain statements, terms and conditions, or documents. In electing to use this online platform you agree and consent to the use of Electronic Signature.

Furthermore, you acknowledge that Electronic Signature is a lawful means of obtaining your signature and that your intent is for it to have the legal equivalent of your handwritten (or wet) signature.

"Electronic Signature" shall mean your use of a device to select a button or take an action to demonstrate your acknowledgment and/or consent to any terms, conditions, statements, or disclosures. You agree that no certification authority or other third-party verification is necessary to validate this Electronic Signature and that the lack of such certification or third-party verification shall not in any way affect the enforceability of this Electronic Signature.

**Kristine McKeown Accepted Consent to use Electronic Signatures April 25, 2024 at 1:09 p.m. MST**

## Tax Withholding

| | |
|---|---|
| W4101 Form | https://ai-advantageprod-static.s3.us-east-1.amazonaws.com/d |
| | Kristine McKeown completed April 25, 2024 at 1:14 p.m. MST |
| | Kristine McKeown signed April 25, 2024 at 1:14 p.m. MST |

| | |
|---|---|
| CA101 Form | https://ai-advantageprod-static.s3.us-east-1.amazonaws.com/d |
| | Kristine McKeown completed April 25, 2024 at 1:19 p.m. MST |
| | Kristine McKeown signed April 25, 2024 at 1:19 p.m. MST |

## Payroll Information

**Direct Deposit Instructions**

Please make sure that the information you provide is correct as direct deposit will begin on your first payroll. By entering in your account, you are authorizing us to electronically transmit funds into your account and if necessary, make adjustments to such transmissions. You are authorizing us to do so solely for the purposes of processing payroll and/or expense reimbursements.

If depositing to a savings account, ask your bank to give you the Routing/Transit Number for your account. It isn't always the same as the number on a savings deposit slip. This will help ensure that you are paid correctly.

| | |
|---|---|
| Payment Method | Direct Deposit |

## Documents to Review

| Arbitration Agreement Acknowledgement | https://d25m2ntj5edza4.cloudfront.net/media/form-documents |
|---|---|
| | Kristine McKeown Viewed April 25, 2024 at 1:21 p.m. MST |
| | Kristine McKeown accepted digital consent April 25, 2024 at 1:21 p.m. MST |

| Agreement Regarding Confidentiality,Non-Solicitation And Other Matters Non-CA, Non-NJ, Non-WA | https://d25m2ntj5edza4.cloudfront.net/media/form-documents |
|---|---|
| | Kristine McKeown Viewed April 25, 2024 at 1:21 p.m. MST |
| | Kristine McKeown accepted digital consent April 25, 2024 at 1:21 p.m. MST |

| SAS Associate Field Guide | https://d25m2ntj5edza4.cloudfront.net/media/form-documents |
|---|---|
| | Kristine McKeown Viewed April 25, 2024 at 1:21 p.m. MST |
| | Kristine McKeown accepted digital consent April 25, 2024 at 1:26 p.m. MST |

| Advantage Solutions U.S. Associate Handbook | https://d25m2ntj5edza4.cloudfront.net/oms/000000/document/ |
|---|---|
| | Kristine McKeown Viewed April 25, 2024 at 1:21 p.m. MST |
| | Kristine McKeown accepted digital consent April 25, 2024 at 1:26 p.m. MST |

| Associate Handbook Acknowledgement Form | https://d25m2ntj5edza4.cloudfront.net/media/form-documents |
|---|---|
| | Kristine McKeown Viewed April 25, 2024 at 1:22 p.m. MST |
| | Kristine McKeown accepted digital consent April 25, 2024 at 1:22 p.m. MST |

| Code of Business Conduct and Ethics | https://d25m2ntj5edza4.cloudfront.net/media/form-documents |
|---|---|
| | Kristine McKeown Viewed April 25, 2024 at 1:22 p.m. MST |
| | Kristine McKeown accepted digital consent April 25, 2024 at 1:22 p.m. MST |

| Code of Business Conduct and Ethics Acknowledgement | https://d25m2ntj5edza4.cloudfront.net/media/form-documents |
|---|---|
| | Kristine McKeown Viewed April 25, 2024 at 1:22 p.m. MST |
| | Kristine McKeown accepted digital consent April 25, 2024 at 1:22 p.m. MST |

| Sexual and Other Unlawful Harassment Policy | https://d25m2ntj5edza4.cloudfront.net/media/form-documents |
|---|---|
| | Kristine McKeown Viewed April 25, 2024 at 1:22 p.m. MST |
| | Kristine McKeown accepted digital consent April 25, 2024 at 1:22 p.m. MST |

| Sexual and Other Unlawful Harassment Policy Acknowledgement | https://d25m2ntj5edza4.cloudfront.net/media/form-documents |
|---|---|
| | Kristine McKeown Viewed April 25, 2024 at 1:22 p.m. MST |
| | Kristine McKeown accepted digital consent April 25, 2024 at 1:23 p.m. MST |

FCRA Summary of Rights

https://d25m2ntj5edza4.cloudfront.net/media/form-documents

Kristine McKeown Viewed April 25, 2024 at 1:23 p.m. MST
Kristine McKeown accepted digital consent April 25, 2024 at 1:23 p.m. MST

Notice to Disclosure

https://d25m2ntj5edza4.cloudfront.net/media/form-documents

Kristine McKeown Viewed April 25, 2024 at 1:23 p.m. MST
Kristine McKeown accepted digital consent April 25, 2024 at 1:23 p.m. MST

Authorization to Obtain Consumer
Report

https://d25m2ntj5edza4.cloudfront.net/media/form-documents

Kristine McKeown Viewed April 25, 2024 at 1:23 p.m. MST
Kristine McKeown accepted digital consent April 25, 2024 at 1:23 p.m. MST

CA Disclosure Acknowledgement
Form

https://d25m2ntj5edza4.cloudfront.net/oms/A00N89BL0Y_1677

Kristine McKeown Viewed April 25, 2024 at 1:23 p.m. MST
Kristine McKeown accepted digital consent April 25, 2024 at 1:23 p.m. MST

State Law Notices

https://d25m2ntj5edza4.cloudfront.net/oms/PBC28IPDZ4_1677

Kristine McKeown Viewed April 25, 2024 at 1:23 p.m. MST
Kristine McKeown accepted digital consent April 25, 2024 at 1:23 p.m. MST

Drug and Alcohol Policy

https://d25m2ntj5edza4.cloudfront.net/oms/000000/document

Kristine McKeown Viewed April 25, 2024 at 1:23 p.m. MST
Kristine McKeown accepted digital consent April 25, 2024 at 2:14 p.m. MST