Drew Lewis, Esq. (SBN 309288)
drew@drewlewis.law
**DREW LEWIS, PC**
3010 Lava Ridge Ct. Ste. 120
Roseville, CA 95661
Tel: (833) 600-7400

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINE MCKEOWN, an individual, on behalf of him/herself and all similarly situated individuals,<br><br>Plaintiff(s),<br>v.<br><br>SAS RETAIL SERVICES, LLC, a Delaware LLC, DOES 1-20, inclusive,<br><br>Defendant(s). | Case No.:  4:25-cv-03654-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS ALL CLAIMS**<br><br>Date:         July 10, 2025<br>Time:         2:00 p.m.<br>Judge:        Hon. Haywood S. Gilliam, Jr.<br>Courtroom.:  2 - 4th floor<br><br>Complaint Filed:   December 17, 2024<br>Trial Date:        **Not Set** |

1

Table of Contents

I.    INTRODUCTION ..................................................................................................................1

II.   FACTUAL BACKGROUND ................................................................................................2

III.  LEGAL ARGUMENT ...........................................................................................................4

    A.   **The Arbitration Agreement Is Unenforceable Because It Is Procedurally And Substantively Unconscionable.** .......................................................................................4

        1. The Arbitration Agreement is procedurally unconscionable because it links to JAMS rules which are subject to change without notice to Plaintiff. ........................6

    B.   **The Arbitration Agreement Is Rife With Substantive Unconscionability.** ..............7

        1. The Arbitration Agreement is substantively unconscionable because it requires Plaintiff to arbitrate "all claims," whether or not arising from the employment relationship. .............................................................................................................7

        2. The Arbitration Agreement is substantively unconscionable because it requires would-be litigants to submit to "bellwether" procedures allowing no more than 10 cases to go forward at a time. .................................................................................8

        3. The Arbitration Agreement is substantively unconscionable because it lacks mutuality—requiring Plaintiff to arbitrate disputes with third parties without requiring them to do the same. ................................................................................11

        4. The Arbitration Agreement is substantively unconscionable because its duration is effectively indefinite. ...................................................................................................11

        5. The Arbitration Agreement is ambiguous as to allocation of costs for claims against nonsignatory third parties. ........................................................................................12

        6. The Arbitration Agreement is substantively unconscionable because it prohibits all collective proceedings with no exception for PAGA proceedings. ..........................13

    C.   **The Arbitration Agreement Is So Permeated With Unconscionability That The Unconscionable Provisions Cannot Be Severed, And Instead, The Entire Agreement Must Be Rejected As Unconscionable.** .....................................................14

    D.   **Defendants' Request For Judicial Notice Is Improper To The Extent It Seeks To Establish Rulings In Other Cases As Having Any Kind Of Dispositive Effect In The Current Case.** ........................................................................................................15

IV.   CONCLUSION ....................................................................................................................16

Table of Authorities

**Cases**

*Adolph v. Uber Technologies, Inc.*
    (2023) 14 Cal.5th 1104 ................................................................................................... 13

*Armendariz v. Foundation Health Psychcare Services, Inc.*
    (2000) 24 Cal.4th 83 ............................................................................................... 4, 5, 12

*Cook v. University of Southern California*
    (2024) 102 Cal.App.5th 312 ................................................................................ 1, 2, 7, 11

*Fitz v. NCR Corp.*
    (2004) 118 Cal.App.4th 702 .............................................................................................. 6

*Harper v. Ultimo*
    (2003) 113 Cal.App.4th 1402 ............................................................................................ 6

*Hasty v. American Automobile Assn. etc.*
    (2023) 98 Cal.App.5th 1041 ................................................................................ 6, 13, 14

*Iskanian v. CLS Transportation Los Angeles, LLC*
    (2014) 59 Cal.4th 348 ..................................................................................................... 13

*MacClelland v. Cellco Partnership*
    (N.D. Cal. 2022) 609 F.Supp.3d 1024 ............................................................................ 10

*McGrath v. DoorDash, Inc.*
    (N.D. Cal., Nov. 5, 2020, No. 19-CV-05279-EMC) 2020 WL 6526129 ........................ 10

*OTO, L.L.C. v. Kho*
    (2019) 8 Cal.5th 111 ......................................................................................................... 5

*Pandolfi v. AviaGames, Inc.*
    (N.D. Cal., Sept. 4, 2024, No. 23-CV-05971-EMC) 2024 WL 4051754 ....................... 14

*Sanchez v. Valencia Holding Co., LLC*
    (2015) 61 Cal.4th 899 ....................................................................................................... 5

*U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*
    (9th Cir. 1992) 971 F.2d 244 ........................................................................................... 15

*Viking River Cruises, Inc. v. Moriana*
    (2022) 596 U.S. 639 ....................................................................................................... 13

*Wal-Mart Stores, Inc. v. Dukes*
    (2011) 564 U.S. 338 ......................................................................................................... 9

*Zee Medical Distributor Association, Inc. v. Zee Medical, Inc.*
    (2000) 80 Cal.App.4th 1 ................................................................................................. 12

**Statutes**

Code Civ. Proc. § 1284 ...................................................................................................................... 12

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Kristine McKeown works for Defendant SAS Retail Services, LLC as a merchandise stocker. She is required to travel to multiple locations during the workday to perform her job duties. Plaintiff brought an individual and class action wage and hour lawsuit against Defendant, alleging minimum wage and overtime violations based on Defendant's failure to accurately record travel time, meal and rest break violations, pay statement violations, and failure to timely pay wages during employment. .

Defendants have moved to compel arbitration under the terms of a document which Defendants allege Plaintiff electronically signed as part of her onboarding documents on April 11, 2024 and again on April 25, 2024. However, Defendants cannot escape the fact that the agreement they seek to enforce is highly unconscionable, both procedurally and substantively:

- The Agreement is a contract of adhesion and consequently is procedurally unconscionable. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113.)

- The Agreement is substantively unconscionable because it requires Plaintiff to arbitrate "all claims" not only with Defendants but also with thousands of clients, customers, affiliates, subsidiaries, and fellow employees, whether or not those claims arise from the employment relationship, and with no reciprocal requirement for those third parties to arbitrate claims they may have against Plaintiff. (*Cook v. University of Southern California* (2024) 102 Cal.App.5th 312, 322, 325, 327-328.)

- The Agreement is substantively unconscionable because it implements a "bellwether" procedure limiting arbitrations against Defendants to no more than 10 at a time, with no guarantee that Plaintiff (or any other signatory) will have their claims timely heard—obviating any ability by employees to obtain relief on claims against Defendants within any reasonable timeframe. The procedure put in place by Defendants not only sidesteps the class action procedures designed to efficiently litigate large numbers of employee

1

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBTRATION                                    Case No.: 3:25-cv-03654-HSG

claims, but also implements a claims hearing system more onerous than standardized mass arbitration procedures implemented by JAMS and AAA—and constitutes an egregious example of cherry-picking rules to delay and stymie employees' ability to obtain redress for their Labor Code claims.

- The Agreement is substantively unconscionable because, absent mutual written consent of the parties, it is effectively indefinite in duration. (*Cook v. University of Southern California* (2024) 102 Cal.App.5th 312, 322, 326.)
- The Agreement is substantively unconscionable because it is ambiguous as to allocation of costs for claims Plaintiff is compelled to arbitrate against nonsignatory third parties.
- The Agreement is substantively unconscionable because it provides no certainty as to the JAMS arbitration rules that will be in effect at whatever future date claims may arise. (*Hasty v. American Automobile Assn. etc*. (2023) 98 Cal.App.5th 1041, 1061.)
- The Arbitration Agreement is substantively unconscionable because it prohibits all collective claims with no exception for non-individual PAGA actions. (*Hasty v. American Automobile Assn. etc*. (2023) 98 Cal.App.5th 1041, 1062-1063.)

For these reasons, the agreement taken as a whole is so permeated with unconscionability that the unconscionable provisions cannot be severed—the Court should instead reject the entire agreement as unenforceable and deny Defendant's Motion. (See *Ramirez v. Charter Communications, Inc*. (2024) 16 Cal.5th 478, 516.)

## II. FACTUAL BACKGROUND

On December 17, 2024, Plaintiff Kristine McKeown filed a class action complaint against Defendant SAS Retail Services, LLC. Plaintiff subsequently added Advantage Solutions, Inc. (erroneously named as Adavantge Solutions, Inc.) and Daymon Worldwide, Inc. as Doe Defendants. (*See* Declaration of Drew Lewis ("Lewis Decl.") at ¶ 2.) The case was removed from the Alameda County Superior Court to the United States District Court on April 25, 2025. (*Id*.)

Plaintiff's complaint alleges that since approximately April 2024, she has worked for

Defendants stocking merchandise at multiple retail locations in and around Alameda County, California, and that during the course of her workday she is required to travel to multiple locations, but has not been fully compensated for travel time based on Defendant's failure to accurately track that time. (*Id*. At ¶ 3) Plaintiff's lawsuit alleges violations of California's minimum wage and overtime laws by failing to pay Plaintiff and similarly situated employees for travel time between work locations, failure to provide code-compliant meal and rest breaks, failure to pay all wages due when earned, failure to provide code-compliant paystubs, and unfair competition under Business & Professions Code § 17200. (*Id*.)

Defendants have filed a Motion to compel arbitration of Plaintiff's individual claims and dismiss the class claims, alleging that on April 11, 2024 and again on April 25, 2024, Plaintiff electronically signed an Arbitration Agreement with Advantage Sales & Marketing, LLC, requiring Plaintiff to arbitrate any claims arising during or after employment that she might have against that company's parents, subsidiaries, affiliated entities, clients, customers, or employees or agents of the company or its affiliated entities. (*See* 5/2/25 Andrew Barros Decl. at ¶¶ 18, 25, Exh. B at p.1.) According to the moving papers, the named Defendants are parents, subsidiaries, and/or affiliated entities of Advantage Sales & Marketing, LLC. (*See* 5/2/25 Barros Decl. at ¶ 5.) Defendants argue that under the terms of the Arbitration Agreement, Plaintiff is required to resolve her claims against all the named Defendants through arbitration.

Defendants assert in their Memorandum of Points and Authorities that "Plaintiff ***voluntarily*** executed the Agreement without question." (*See* 5/2/25 MPA at p. 20:12; emphasis added.) However, Defendants provide no evidence for their assertion that Plaintiff's signing of the Agreement was "voluntary" in any sense her signing was optional or anything other than a mandatory condition of her employment with SAS.

Contrary to Defendants' assertion of voluntariness, Plaintiff's Declaration establishes that she was never advised that her signing of the Arbitration Agreement was in any way optional. Plaintiff states in her Declaration that when she began the hiring process with SAS in approximately April 2024, she attended a brief in-person orientation. During that orientation she was not present for any instruction or discussion where arbitration was discussed. (*See*

3

Declaration of Kristine McKeown ("McKeown Decl.") at ¶ 4.) The SAS recruiter, Phil Felix, told Plaintiff she would be receiving onboarding documents in electronic format which she needed to sign to move forward in the hiring process. (McKeown Decl. at ¶ 5.) When Plaintiff received the onboarding documents, which included the Arbitration Agreement at issue in Defendants' Motion, she electronically signed the documents as instructed. (*Id.*)

At no point during the hiring process did Mr. Felix or anyone else at SAS advise Plaintiff that she could opt-out of signing the Arbitration Agreement and still work for SAS: she understood signing all the onboarding documents—including the Arbitration Agreement—to be a mandatory condition of employment. (McKeown Decl. at ¶ 6.) Additionally, nobody at SAS ever communicated to Plaintiff that she would be able to negotiate the Arbitration Agreement's terms or propose modifications to the Agreement. (*Id.* at ¶ 7.)

### III.    LEGAL ARGUMENT

An agreement to arbitrate employment disputes will be found to be unenforceable if it contains sufficient elements of procedural and substantive unconscionability. This is a balancing test to be performed by the court: "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114.) The balancing analysis is qualitative rather than quantitative. (See *Ramirez v. Charter Communications, Inc*. (2024) 16 Cal.5th 478, 516.) And a single incident of unconscionability is enough to hold the entire agreement unenforceable. (*Id*.) Here, the Arbitration Agreement suffers from a fatally high degree of oppressiveness and unconscionability, and the Court should deny Defendant's request to enforce it.

**A. The Arbitration Agreement Is Unenforceable Because It Is Procedurally And Substantively Unconscionable.**

Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." If the contract is adhesive, the court must then determine whether "other factors

4

are present which, under established legal rules — legislative or judicial — operate to render it [unenforceable].

(*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113; citations omitted; see also *OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126: "An adhesive contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power on a take-it-or-leave-it basis.")

"Moreover, in the context of consumer contracts, we have never required, as a prerequisite to finding procedural unconscionability, that the complaining party show it tried to negotiate standardized contract provisions." (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 914.) Instead, an adhesive contract by itself "is sufficient to establish some degree of procedural unconscionability" requiring a court to "scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." (*Id*. at 915.)

Defendants assert in their Memorandum of Points and Authorities that Plaintiff signed the Arbitration Agreement "voluntarily." If Defendants mean Plaintiff's signing was optional or non-mandatory, Defendants have offered zero evidence for this. Nowhere in Defendants' supporting declarations or exhibits is there any evidence that the Arbitration Agreement was presented to Plaintiff as anything other than part of the onboarding documents that Plaintiff was required to sign as a condition of employment, or that her execution of the Arbitration Agreement was communicated to her as being in any way optional. Further, Plaintiff's own Declaration evidences that she was presented with electronic onboarding documents—including the Arbitration Agreement—and was told to sign them. (McKeown Decl. at ¶ 5.) Plaintiff states she understood this to be a mandatory requirement of her employment with SAS. (*Id*. at ¶ 6.) She was not offered an opportunity to negotiate the Agreement's terms or propose modifications. (*Id*. at ¶ 7.)

For these reasons, all the evidence properly before this Court demonstrates that the Agreement was presented to Plaintiff on a take-it-or-leave-it basis, as a mandatory condition of employment. This is the classic contract of adhesion recognized in *OTO*, *Armendariz* and *Sanchez,* and the requisite degree of procedural unconscionability is established.

**1. The Arbitration Agreement is procedurally unconscionable because it links to JAMS rules which are subject to change without notice to Plaintiff.**

Numerous courts have held that failure to provide an employee or consumer with sufficient notice of the procedural rules applicable to an arbitration agreement constitutes "surprise" that will render the agreement procedurally unconscionable. (See *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 721, finding procedural unconscionability when agreement "incorporates arbitration rules that were not attached and requires the other party to go to another source in order to learn the full ramifications of the arbitration agreement"; see also *Harper v. Ultimo* (2003) 113 Cal.App.4th 1402, 1406, finding procedural unconscionability when customer contract did not include copy of applicable arbitration rules, requiring customers "to go to another source to find out the full import of what he or she is about to sign—and must go to that effort prior to signing.") Similarly, in *Hasty v. American Automobile Assn. etc.* (2023) 98 Cal.App.5th 1041, 1061, the agreement contained a hyperlink to JAMS arbitration rules that was nonfunctional at the time the Court of Appeal tried to access it. "Even if the hyperlink worked when Hasty signed the agreement, however, . . . ***[i]t is unclear how an employee would know what terms he, she, or they were agreeing to at the time of signing the agreement when the rules and procedures may be different when a dispute arises in the future***." (*Id*. at 1061; Emphasis added.)

As was the case in *Hasty*, the Agreement Defendants seek to enforce in this Motion is procedurally unconscionable because it calls for arbitration to occur pursuant to the JAMS employment arbitration rules found on the JAMS website that are "in effect at the time the Claim is submitted." We have the same problem of unconscionable surprise that arose in *Hasty*: Defendants' Arbitration Agreement provides Plaintiff no certainty as to which version of the arbitration rules will apply at any given point in the future. At present, the website link in the Agreement leads to JAMS employment arbitration rules effective June 1, 2021. (*See* Lewis Decl. at ¶ 5, **Exh. 1**). As with *Hasty*, the Agreement provides no predictability regarding future rule changes, or how any rule change by JAMS might incorporate additional provisions that are disadvantageous to Plaintiff and/or unconscionable. Arbitration providers such as JAMS and

AAA update their rules regularly: very recently, on May 1, 2025, AAA implemented a revised edition of its employment arbitration rules. (*See* Lewis Decl. at ¶ 6, **Exh. 2.**) JAMS may similarly elect to revise its employment arbitration rules at any time, with no notice required to Plaintiff. This lack of certainty regarding the arbitration rules that will apply to future claims further illustrates the capricious and unforeseeable nature of the Agreement and exacerbates its procedural unconscionability.

**B. The Arbitration Agreement Is Rife With Substantive Unconscionability.**

    **1. The Arbitration Agreement is substantively unconscionable because it requires Plaintiff to arbitrate "all claims," whether or not arising from the employment relationship.**

The Arbitration Agreement calls for arbitration not only of claims arising out of Plaintiff's employment relationship with Defendant, but "all claims or controversies" that Plaintiff "may have against any of the following: (1) the Company, (2) the Company's parents, subsidiaries and affiliated entities, including but not limited to Daymon Worldwide Inc. (hereinafter, 'Affiliated Entities'), (3) the Company's and its Affiliated Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, (4) all clients and/or customers of the Company or its Affiliated Entities, (5) the officers, directors, employees or agents of the Company, the Affiliated Entities, and clients and/or customers, *in their capacity as such or otherwise*, and (6) all successors and assigns of any of them." (Arb. Agmt. at p. 1; emphasis added.)

Defendant's "all claims" provision is similar in substance to one that the Court of Appeal recently held was unconscionably overbroad in *Cook v. University of Southern California* (2024) 102 Cal.App.5th 312, 322, 325. The *Cook* agreement provided for arbitration of "all claims, whether or not arising out of Employee's University employment, remuneration or termination, that Employee may have against the University or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents." (*Id*. at 322.) Observing that the university could have readily limited the scope of arbitration to employment and termination-related claims, the Court commented: "It is difficult

7

to see how it is justified to expect Cook—as a condition of her employment at the university—to give up the right to ever sue a USC employee in court for . . . claims that are completely unrelated to Cook's employment." (*Id.* at 325.)

The "all claims" provision in the current Arbitration Agreement is similarly oppressive: Plaintiff is required to arbitrate not just claims arising out of her employment, but also claims arising from day-to-day non-employment interactions with hundreds if not thousands of third parties such as company employees and customers. For example, if Plaintiff were to be struck in a crosswalk by a driver who happened to be a company employee, or if she were to slip and fall while shopping in one of the retail establishments that Defendants service, Defendants have the right, under the Arbitration Agreement, to force Plaintiff to arbitrate those claims. This breathtakingly broad obligation on the part of Plaintiff is precisely the type of one-sided agreement *Cook* recognized to be substantively unconscionable and therefore unenforceable.

> **2. The Arbitration Agreement is substantively unconscionable because it requires would-be litigants to submit to "bellwether" procedures allowing no more than 10 cases to go forward at a time.**

Perhaps even more egregious than the Agreement's overbreadth requiring Plaintiff to arbitrate "all claims" against a plethora of affiliates and third parties (even if those claims have no connection to her employment), is the Agreement's provision for "bellwether arbitration procedures . . . when more than 10 cases pending at the same time present substantially similar or overlapping allegations of fact and law." (Arb. Agmt. at p. 3.)

JAMS and AAA have promulgated rules for mass arbitration to manage large numbers of claims—75 or more claims under the JAMS scheme, and 25 or more claims under the AAA scheme. (*See* Lewis Decl. at ¶ 7, **Exh. 3** at Proc. 1(c), **Exh. 4** at § MA-1(b).) JAMS and AAA specify that these mass arbitration procedures are to be used when the claimants are either represented by the same counsel or the claims are otherwise coordinated. (*Id.*)

Rather than simply incorporating the mass arbitration rules available from major providers, Advantage Sales & Marketing, LLC decided to create its own rules with employee-disfavoring provisions not found under the current JAMS or AAA mass arbitration rules. As one

example, the Agreement allows only 10 claims with "substantially similar or overlapping allegations of fact or law" before any subsequent claimants are placed in a holding queue while the current cases resolve. As discussed above, the default limits for JAMS and AAA are 75 and 25 respectively, and those claims must involve the same counsel or coordinated claims for the JAMS and AAA mass arbitration rules to be triggered. By contrast, all that is required to trigger the bellwether provision under Defendants' Agreement is for the claims to "present substantially similar or overlapping allegations of fact or law." This is similar to the class action requirement that claims must "share common questions of law or fact." (*Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338, 353.) But unlike court class action case management procedures, or JAMS/AAA mass arbitration procedures, which are designed to handle large numbers of similar claims with efficiency, Advantage Sales & Marketing, LLC has drafted its own custom set of rules that will allow it and its beneficiaries to take advantage of an overwhelmingly employer-favoring bellwether procedure where it is required to face only 10 wage and hour claims at a time—after having sidestepped both class actions and multiple individual wage lawsuits by requiring employees to sign an inequitable agreement that will delay resolution of any wage claims they might bring while the employer slow-walks an artificially low number of arbitration proceedings.

There is a provision to petition for priority based on demonstrated hardship, but priority cuts both ways—Plaintiff may well reach her place in line to commence her arbitration case, or even be actively engaged in the arbitration, only to find herself bumped off the active list based on another claimant's hardship. When granting a hardship petition, "JAMS shall (based on its determination of relative hardship) remove one other case from the list of 10 active cases and place it at the head of the list of stayed cases. Under no circumstances shall JAMS place more than 10 cases into active status. If more than 10 hardship applications are granted, JAMS shall determine which 10 cases shall proceed first, based on its determination of relative hardship." (Arb. Agmt. at p. 3.)

Plaintiff anticipates Defendants may argue it is unlikely that Plaintiff would be faced with actually having her case delayed due to the bellwether provision. The reality is that

9

multiple arbitration proceedings against SAS Retail Services, Inc. have already been initiated. Although Plaintiff does not know the total number of arbitrations currently pending, Plaintiff is aware of at least five court actions since 2023 involving employees of SAS that have been ordered to arbitration either through a motion to compel or by stipulation of the parties. (See Plaintiff's Request for Judicial Notice ("RJN") at **Exhibits 1, 2, 3, 4**, **5**.) As demonstrated by these cases that have already been sent to arbitration, the prospect of Plaintiff being placed into a waiting queue under the bellwether provision if the total number of employee wage/hour claims exceeds 10 is far from theoretical.

Finally, the Agreement provides no avenue for an employee to escape the delay inherent in bellwether arbitration by participating in mediation or some other opt-out method. (See *McGrath v. DoorDash, Inc.* (N.D. Cal., Nov. 5, 2020, No. 19-CV-05279-EMC) 2020 WL 6526129, at *4, finding bellwether arbitration procedure not unconscionable when it allowed parties, after a 90-day mediation period, to "opt out of the arbitration process and proceed in court with the remaining claims"; see also *MacClelland v. Cellco Partnership* (N.D. Cal. 2022) 609 F.Supp.3d 1024, 1043, finding bellwether provision unconscionable because there was no opt-out, and distinguishing *McGrath* on the basis that "the DoorDash Mass-Claims Protocol did not create the possibility of significant delay that is facially present here.")

This is the very model of an unconscionable agreement designed to discourage employees from filing and maintaining claims for wage theft. Additionally, its one-sided advantage to the employer has a chilling effect on other potential wage claims and for that reason is further substantively unconscionable. "[C]ourts routinely consider the chilling effect on non-parties who may yet seek to vindicate their rights . . . courts may consider the chilling effect of an arbitration clause on individuals to whom it would apply but are not currently plaintiffs." (*MacClelland v. Cellco Partnership, supra,* 609 F.Supp.3d at 1041, finding cell phone arbitration agreement with bellwether requirement substantively unconscionable not only due to its impact on the 27 plaintiffs, but also the agreement's chilling effect on 2,685 other represented customers." The Arbitration Agreement in this case appears designed to exploit the employer's unequal bargaining power over employees by discouraging participation in wage

actions though lengthy and unavoidable delays.

> 3. **The Arbitration Agreement is substantively unconscionable because it lacks mutuality—requiring Plaintiff to arbitrate disputes with third parties without requiring them to do the same.**

The Agreement is not only unconscionably overbroad in its scope, but it also lacks mutuality: Plaintiff is required to arbitrate "all claims or controversies" she may have against the company, its subsidiaries. affiliates, employees and agents, and its clients and customers "in their capacity as such or otherwise"—however, none of these third parties aside from the Company itself are contractually obligated to arbitrate claims they might have against Plaintiff. (See *Cook v. University of Southern California, supra*, 102 Cal.App.5th at 328: without a reciprocal obligation for third parties to arbitrate claims they might have against plaintiff, the trial court did not err in finding the agreement unconscionable for lack of mutuality: "The plain language of the arbitration agreement thus provides a significant benefit to USC's related entities without any reciprocal benefit to Cook.")

There is an identical lack of mutuality in the current Agreement as the Court found to be unconscionable in *Cook*. The one-sidedness is evident and absurd. As another example, if Plaintiff were to get in a car accident with an agent of an affiliated entity, or perhaps an agent of a plan administrator handling benefits on behalf of the company, even if Plaintiff has never met them and is unaware of their status, under the Agreement Plaintiff could be compelled to arbitrate any claims arising from the accident, but the agent would not be reciprocally bound to arbitrate claims against Plaintiff.

> 4. **The Arbitration Agreement is substantively unconscionable because its duration is effectively indefinite.**

Another element of unconscionability recognized in *Cook v. University of Southern California, supra*, 102 Cal.App.5th at 326 was the indefinite duration of the agreement, which would survive "unless and until Cook and USC's president specifically terminate the agreement in a writing, signed by both parties." (*Id*.) Rejecting USC's "argument that the arbitration agreement is terminable at will after a reasonable time," the Court of Appeal held that "the trial

court did not err in holding the duration of the arbitration agreement is substantively unconscionable." (*Id.*, citing *Zee Medical Distributor Association, Inc. v. Zee Medical, Inc.* (2000) 80 Cal.App.4th 1, 10: contract only terminable at will after reasonable time if it contains no express or implied terms of duration.)

The Agreement in this case similarly provides that it "can be modified or revoked only by a document signed by you and the Company CEO." (Arb. Agmt. at p. 2.) Based on this exclusive mechanism for revocation that requires both parties' consent, the Agreement cannot be construed to be terminable at will after a reasonable time, and it is consequently substantively unconscionable under *Cook*.

### 5. The Arbitration Agreement is ambiguous as to allocation of costs for claims against nonsignatory third parties.

The Agreement also creates ambiguity as to who is responsible for arbitration costs for claims not arising from Plaintiff's employment, but that are still covered by the extremely broad terms of the arbitration agreement. The Agreement provides that "Company shall pay all costs peculiar to the arbitration to the extent such costs would not otherwise be incurred in a court proceeding, and ***you shall not be required to pay any type or amount of expense if such requirement would invalidate this agreement or would otherwise be contrary to the law*** as it exists at the time of the arbitration." (Arb. Agmt. at p. 2; emphasis added.)

This provision is presumably in deference to the requirement that to enforce an employment arbitration agreement, the employer must pay "all types of costs that are unique to arbitration." (*Armendariz v. Foundation Health Psychcare Services, Inc.*, *supra*, 24 Cal.4th at 113.) But what happens when the arbitration is between Plaintiff and a non-employer, such as a customer of Advantage Sales & Marketing, LLC? Is Advantage Sales & Marketing, LLC still required to pay Plaintiff's arbitration expenses, or, since it would not be an employment claim, must each party pay pro rata in accordance with the default arbitration expenses allocation of Code Civ. Proc. § 1284.2? This ambiguity further illustrates the lack of mutuality between the parties and the unconscionable overbreadth of the "all claims" provision.

///

**6. The Arbitration Agreement is substantively unconscionable because it prohibits all collective proceedings with no exception for PAGA proceedings.**

The Arbitration Agreement requires Plaintiff to waive any right to participate in or obtain any recovery from any collective proceeding:

> Claims must be brought by either you or Company in your or its individual capacity, not as plaintiffs or class members in any purported class or collective proceeding, and the arbitrator shall not have the power to hear the arbitration or award relief as a class or collective action. Both you and Company waive the right to bring, maintain, participate in, or receive money from any class or collective proceeding.

(Arb. Agmt. at p. 2.)

The Agreement's prohibition of collective claims makes no exception to allow an employee to bring representative claims under PAGA on behalf of the State—an omission which categorically renders the agreement substantively unconscionable. (See *Hasty v. American Automobile Assn. etc*. (2023) 98 Cal.App.5th 1041, 1062-1063, holding waiver of PAGA claims was one-sided and unconscionable, and "can fairly be read to limit only the employee's rights . . . ***it is irrelevant that Hasty has not brought a private attorney general action***. . . . The ban on all representative Act actions thus remains unconscionable because it ***requires an employee to waive a right that is not waivable***." (*Id.*; emphasis added.)

PAGA claims survive an agreement to arbitrate and cannot be waived. (See *Adolph v. Uber Technologies, Inc*. (2023) 14 Cal.5th 1104, expressly holding that California's PAGA statute provides individual employees standing to litigate non-individual PAGA actions even if individual claims are compelled to arbitration, disagreeing with *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 as to PAGA standing for individuals compelled to arbitrate; see also *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384: "[W]here, as here, an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law.")

Here, the plain language of the Arbitration Agreement unambiguously bars Plaintiff from any recovery in a collective action, with no exception for a non-individual PAGA action. Although (as was the case in *Hasty*) Plaintiff has not yet filed a PAGA claim, this prohibition

13

against collective actions is contrary to State law and is unconscionable, further weighing against the Agreement's enforceability.

### C. The Arbitration Agreement Is So Permeated With Unconscionability That The Unconscionable Provisions Cannot Be Severed, And Instead, The Entire Agreement Must Be Rejected As Unconscionable.

A court should refuse to enforce an agreement to arbitrate arising from employment if it finds the agreement is "permeated with unconscionability" that "cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation to cure the unconscionability." (*Ramirez v. Charter Communications, Inc*. (2024) 16 Cal.5th 478, 516, holding the analysis is qualitative rather than quantitative, and even a single provision may be sufficient for the court to refuse enforcement.) Further, "Courts cannot "rewrite agreements and impose terms to which neither party has agreed." (*Id*.) (See also *Hasty v. American Automobile Assn. etc*. (2023) 98 Cal.App.5th 1041, 1064, holding trial court was within its discretion to deny enforcement of arbitration agreement with multiple unconscionable terms and that "[t]o remove the unconscionable taint, [it] would [have] need[ed] to reform the [a]rbitration [a]greement.")

Severance is especially inappropriate in the context of a custom-drafted bellwether provision that declines to follow JAMS or AAA mass arbitration procedures, but instead delays all but 10 employees at a time from having their claims heard in any forum, the chilling effect of the agreement as a whole is blatant. (See *Pandolfi v. AviaGames, Inc*. (N.D. Cal., Sept. 4, 2024, No. 23-CV-05971-EMC) 2024 WL 4051754, at *9, rejecting defendants' request to sever unconscionable bellwether provision in a software arbitration agreement: "Defendants are not entitled to rely on severance as a fix when they profited from inclusion of the bellwether provision in the first instance, i.e., because it may have had a chilling effect that deterred players from ever pursuing their rights in the arbitral forum available to them. ***Severance does not cure the problematic chilling effect of the unconscionable bellwether provision****.*" (Emphasis added.)

The Arbitration Agreement in this case contains not just one, but numerous highly oppressive and unconscionable provisions that cannot reasonably be severed. The agreement

taken as a whole is baldly unconscionable, flagrantly violating law that is decades-old, and the Court would be forced to effectively rewrite the Agreement to render it enforceable. Based on the guidance provided in *Ramirez*, *Hasty*, and *Pandolfi,* the Court should decline to attempt such a rewrite, and should instead reject enforcement of the Agreement in its entirety.

**D. Defendants' Request For Judicial Notice Is Improper To The Extent It Seeks To Establish Rulings In Other Cases As Having Any Kind Of Dispositive Effect In The Current Case.**

In support of their Motion Defendants have filed a Request for Judicial Notice under Federal Rules of Evidence 201, regarding orders by other courts granting motions to compel arbitration brought by SAS Retail Services, Inc. Judicial Notice of these other orders is improper to the extent Defendants present them as having any kind of dispositive effect on the current case.

Defendants cite *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc*. (9th Cir. 1992) 971 F.2d 244, 248 as authority for granting judicial notice as to rulings in California superior court proceedings that were "directly related" to the federal action "and may in fact be dispositive." (*Id*.) *Robinson* recognized that the California superior court proceedings *involving the same plaintiff which was now bringing a federal action to challenge the superior courts' jurisdiction* had res judicata effect as to plaintiff's federal action and required dismissal of the federal action: "Robinson entered the fray in the California court system and those courts have decided both that they have jurisdiction and that the contract can and must be enforced against Robinson. That determination is res judicata." (*Id*. at 254.)

Unlike *Robinson*, Defendants have offered no evidence that Ms. McKeown is a party to any of the cases referenced in the minute orders for which Defendants seek judicial notice, or that Plaintiff otherwise had notice of, or had any reason to appear and oppose, the motions to compel arbitration that were litigated by the parties in those actions. Further, the Court's docket in the current action does not show that either of those Superior Court actions have been ordered related or consolidated with this action. For these reasons, it would be a fundamental abuse of due process to grant judicial notice as to any kind of res judicata or other dispositive effect of the

15

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBTRATION

Case No.: 3:25-cv-03654-HSG

orders in those cases, with respect to Defendants' Motion in this case.

Additionally, it appears that two of the three arbitration agreements at issue in those Superior Court cases were substantively different from the Agreement at issue in this case—as a key example, two of those agreements contain no bellwether provision. (See Plaintiff's Request for Judicial Notice ("RJN") at **Exhs. 6, 7**.) As to the third agreement, which does contain a bellwether provision (*see* Plaintiff's RJN at **Exh. 8**), the conscionability of the bellwether provision does not appear to have been addressed in the Superior Court's minute order, which focused its analysis exclusively on the applicability of the arbitration agreement to the plaintiff's PAGA claims. (*See* Plaintiff's RJN at **Exh. 1**.) Again, it would be highly prejudicial to apply any kind of res judicata or other dispositive effect to another court's order in a case in which Plaintiff was not a party, especially when Plaintiff has raised legal arguments applicable to her case and her arbitration agreement which were not addressed in the other court's order. Defendants have provided absolutely no evidentiary basis why any dispositive effect from any of those other Court's orders should apply to this case, and consequently, judicial notice of the type sought by Defendants would be highly improper.

## IV.   CONCLUSION

For the reasons discussed above, Plaintiff respectfully requests that the Court DENY Defendant's Motion to Compel Arbitration in its entirety.

**DREW LEWIS, PC**

Dated:  May 16, 2025

By: _____
Drew Lewis
Attorney for Plaintiff(s)