UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTINE MCKEOWN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SAS RETAIL SERVICES, LLC, et al.,<br><br>　　　　Defendants. | Case No. 25-cv-03654-HSG<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 10 |

Pending before the Court is a motion to compel arbitration filed by Defendants SAS Retail Services LLC, Daymon Worldwide Inc., and Advantage Solutions, Inc. Dkt. No. 10. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS** the motion to compel arbitration.

I.  **BACKGROUND**

Plaintiff Kristine McKeown initially filed this putative wage-and-hour class action in Alameda Superior Court. *See* Dkt. No. 1-2, Ex. B ("Compl."). Plaintiff alleges that Defendant SAS "provides retail merchandise stocking services" to retail stores throughout California.[1] *Id.* at ¶ 18. Plaintiff contends that as a "merchandise stocker" for SAS, she was required to travel throughout the State. *Id.* at ¶¶ 19–20. However, Plaintiff alleges that SAS underestimated employees' actual travel time and failed to reimburse them for work-related expenses related to this travel. *See id.* at ¶¶ 20–25. Plaintiff seeks to represent a class of non-exempt California

---

[1] According to Defendants, they are all affiliated entities. Advantage Solutions, Inc. ("Advantage") is the parent company. *See* Dkt. No. 10 at 8, & n.1. SAS is a wholly owned subsidiary of Daymon. *Id.* Daymon is a wholly owned subsidiary of Advantage Sales & Marketing LLC, which in turn is a wholly owned subsidiary of Advantage. *Id.*

1  employees who continue to work for SAS. *See id.* at ¶ 8. Defendants removed the case to federal
2  court under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). *See* Dkt. No. 1.
3        Since removing the case, Defendants also filed a motion to compel arbitration, alleging
4  that Plaintiff entered into an arbitration agreement as part of her employment with SAS. Dkt. No.
5  10. Defendants state that Plaintiff electronically consented to the arbitration agreement in April
6  2024, through the company's online onboarding program. *See* Dkt. No. 10-2 at ¶¶ 6–15, 22–26, &
7  Exs. B–E. Plaintiff (like all employees) had to log in to execute onboarding documents. *Id.* at
8  ¶ 13. As relevant here, one of the documents is a three-page document entitled "Arbitration
9  Agreement Acknowledgment." *See id.*, Ex. B. As part of the onboarding process, employees
10 must check a box at the end of the agreement, indicating their assent to it. *See id.* at ¶ 13, & Ex. F
11 at 33. Defendants produced records showing that Plaintiff assented to the arbitration agreement.
12 *See id.*, Ex. F.
13       The arbitration agreement itself states in relevant part that Plaintiff and Advantage Sales &
14 Marketing LLC (the "Company"):

> agree to resolve in binding arbitration all claims or controversies ("Claims") that the Company may have against you, or that you (and no other party) may have against any of the following: (1) the Company, (2) the Company's parents, subsidiaries and affiliated entities, including but not limited to Daymon Worldwide Inc. (hereinafter, "Affiliated Entities"), (3) the Company's and its Affiliated Entities' benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, (4) all clients and/or customers of the Company or its Affiliated Entities, (5) the officers, directors, employees or agents of the Company, the Affiliated Entities, and clients and/or customers, in their capacity as such or otherwise, and (6) all successors and assigns of any of them. Under this Agreement, any Claims will be decided by an arbitrator rather than by a judge or jury. Both you and the Company may seek to enforce this Agreement.

*See* Dkt. No. 10-2, Ex. B at 18. "Claims," in turn, are further defined as:

> all statutory, contractual and/or common law claims including, but not limited to, claims arising under Title VII of the Civil Rights Act of 1964; the Age Discrimination in Employment Act; the Equal Pay Act of 1963; the California Fair Employment and Housing Act; the California Labor Code; the Fair Labor Standards Act; the Americans with Disabilities Act; and other federal, state and local employment laws.

1    *Id.*  The agreement also states that claims will be brought in an individual capacity only:

> Claims must be brought by either you or Company in your or its individual capacity, not as plaintiffs or class members in any purported class or collective proceeding, and the arbitrator shall not have the power to hear the arbitration or award relief as a class or collective action. Both you and Company waive the right to bring, maintain, participate in, or receive money from any class or collective proceeding.

*Id.* at 19.

Defendants argue that Plaintiff's claims, which arise out of her employment with Defendant SAS, fall within the scope of the arbitration agreement, and thus her individual claims must be compelled to arbitration.  *See generally* Dkt. No. 10.

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable."  9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same).  The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate."  *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).  Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration."  *Id*.

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).  The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.  *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015).  In either

instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (citing 9 U.S.C. § 2).

### III. DISCUSSION

Plaintiff does not appear to dispute that the parties entered into an arbitration agreement. *See* Dkt. No. 27 at 4 ("When Plaintiff received the onboarding documents, which included the Arbitration Agreement at issue in Defendants' Motion, she electronically signed the documents as instructed."). Rather, she urges that the agreement itself is unconscionable and thus unenforceable.[2] *See id.* at 4–15. Under California law, an agreement is enforceable unless it is both procedurally and substantively unconscionable. *See Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000). However, procedural and substantive unconscionability "need not be present in the same degree." *Id.* Rather, unconscionability is a "sliding scale" such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* "The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 247 (Cal. 2012).

#### A. Procedural Unconscionability

Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power." *Armendariz*, 24 Cal. 4th at 114 (quotation omitted). Plaintiff argues that the arbitration agreement here is procedurally unconscionable because it (1) is a contract of adhesion; and (2) incorporates the operative JAMS Employment Arbitration Rules, which are subject to change. *See* Dkt. No. 27 at 4–7; *see also* Dkt. No. 10-2, Ex. B at 18.

Defendants do not meaningfully dispute that the arbitration agreement constitutes a

---

[2] The parties appear to acknowledge that under the agreement, the Court—and not the arbitrator—should decide this threshold issue of enforceability. *See* Dkt. No. 10-2, Ex. B at 19 ("Notwithstanding any provision of the JAMS Rules, a court of competent jurisdiction (and not an arbitrator) shall resolve any dispute about the application or enforceability of any provision of this paragraph.").

4

contract of adhesion. *See* Dkt. No. 30 at 7–8. "The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 24 Cal. 4th at 113 (quotation omitted). Here, Plaintiff states that signing the arbitration agreement was a condition of her employment offer, and she was not given an opportunity to negotiate any of its terms. *See* Dkt. No. 27 at 5; *see also* Dkt. No. 27-2 ("McKeown Decl.") at ¶¶ 6–7. The Court agrees that, as such, Plaintiff has established that the agreement was procedurally unconscionable, at least to a small degree. *See Ramirez v. Charter Commc'ns, Inc.*, 16 Cal. 5th 478, 494 (Cal. 2024) ("[A]dhesion alone generally indicates only a low degree of procedural unconscionability . . . .").

Plaintiff attempts to strengthen her showing of procedural unconscionability by pointing out that the arbitration agreement also incorporates—and links to—the operative JAMS rules, which are subject to change at any time. *See* Dkt. No. 27 at 6–7. Specifically, the arbitration agreement states:

> The arbitration will be administered by JAMS and conducted in accordance with the rules and procedures provided by the JAMS Rules *in effect at the time the Claim is submitted*. Those rules are available at http://www.jamsadr.com/rules-employment-arbitration/ The Company will provide you with a printed copy of the rules upon request.

*See* Dkt. No. 10-2, Ex. B at 19 (emphasis added). Based on this language, Plaintiff suggests that at the time she entered into the agreement she had "no certainty as to which version of the arbitration rules" would apply to her claims. Dkt. No. 27 at 6. She further suggests that JAMS could decide to change the rules to include "provisions that are disadvantageous to Plaintiff and/or unconscionable." *Id.*

In support of this argument, Plaintiff cites *Hasty v. American Automobile Ass'n*, 98 Cal. App. 5th 1041 (Cal. Ct. App. 2023). But in *Hasty*, the California Court of Appeal did not actually find that a provision applying the "rules of JAMS then in effect" was unconscionable. The parties did not raise the issue. Instead, the court first noted that the link to the JAMS rules in the

5

agreement was broken and led to a webpage stating, "Page Not Found." *See id.* at 1061. That is not the case here. *See* Dkt. No. 27-1 ("Lewis Decl.") at ¶ 5 (acknowledging that the link currently leads to the JAMS Employment Arbitration Rules in effect as of June 2021). The court also observed in passing that even if the link worked, under the agreement an employee would not necessarily know which rules would apply to "a dispute aris[ing] in the future." *Id.*

In any event, to the extent Plaintiff reads *Hasty* to suggest that unconscionability may exist based on the mere possibility that the applicable rules could change in the future, the Court is unpersuaded. *Accord Kittrell v. USA Debusk LLC*, No. 25-CV-02432-MMC, 2025 WL 3049883, at *8 (N.D. Cal. Oct. 31, 2025). Plaintiff was provided a useable link to the JAMS rules effective as of June 1, 2021, and those rules have remained unchanged since Plaintiff's employment began in 2024. Any changes would apply equally to both Defendants and Plaintiff. Moreover, the arbitration agreement, which states that the applicable JAMS rules will be those in effect at the time a claim is submitted, simply tracks the JAMS rules themselves.[3] In short, this appears to be a common provision that does not render the agreement unconscionable.

Given the low level of procedural unconscionability, the Court turns to Plaintiff's argument that the agreement is also substantively unconscionable. *Cf. Ramirez*, 16 Cal. 5th at 494 (cautioning that courts should be especially vigilant and closely scrutinize contracts for unconscionability in the employment context given economic pressures on employees); *Armendariz*, 24 Cal. 4th at 115 (noting that "few employees are in a position to refuse a job because of an arbitration requirement").

**B.  Substantive Unconscionability**

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 125 (Cal. 2019) (quotation omitted). The doctrine "is concerned with terms that are 'unreasonably favorable to the more powerful party,' not just 'a simple old-fashioned bad

---

[3] Rule 3 states in relevant part that "[t]he Rules in effect on the date of the commencement of an Arbitration . . . shall apply to that Arbitration, unless the Parties have agreed upon another version of the Rules." *See* JAMS Employment Arbitration Rules & Procedures, available at https://www.jamsadr.com/rules-employment-arbitration/english (last visited Dec. 12, 2025).

1  bargain.'"  *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1001–02 (9th Cir. 2021) (quoting *OTO*, 8
2  Cal. 5th at 130).  Plaintiff argues that the arbitration agreement is substantively unconscionable for
3  multiple reasons:  (1) its scope is too broad because it applies to claims outside the employment
4  context; (2) it includes a provision for "bellwether" procedures in which only 10 cases that are
5  substantially similar may proceed at a time; (3) it lacks mutuality because third parties are not
6  required to arbitrate disputes with Plaintiff; (4) its duration is unlimited; (5) there is ambiguity
7  about who bears the costs of the arbitration if it involves third parties; and (6) it precludes all
8  collective proceedings, including those under California's Private Attorneys General Act
9  ("PAGA").  *See* Dkt. No. 27 at 7–14.

### i. Scope

As an initial matter, Plaintiff contends that the arbitration agreement is too broad because it includes "all claims or controversies" and not just those arising out of Plaintiff's employment relationship.  *See* Dkt. No. 27 at 7–8.  Defendants, for their part, appear implicitly to acknowledge that an agreement which was not limited to the employment context could be too broad.  *See* Dkt. No. 30 at 10–14.  Nevertheless, Defendants contend that when read in context, it is clear that the agreement only applies to claims arising out of Plaintiff's employment.  *Id.*

The first few lines of the arbitration agreement state:  "It is not uncommon for disputes to arise *between an employer and an employee*.  Arbitration is a speedy, impartial and cost-effective way to resolve *these disputes*."  *See* Dkt. No. 10-2, Ex. B at 18 (emphasis added).  The agreement continues that it is "[f]or this reason" that the parties "agree to resolve in binding arbitration all claims or controversies . . . ."  *Id.*  Although in isolation "all claims or controversies" may appear untethered to employment, this framing language suggests that the parties' intent is to arbitrate claims arising out of the employment relationship.

This limitation is further highlighted in other provisions of the arbitration agreement.  For example, although provided as a non-exhaustive list, arbitrable "claims" are further defined in the context of specific labor and employment laws:

> all statutory, contractual and/or common law claims including, but not limited to, claims arising under Title VII of the Civil Rights Act of

7

> 1964; the Age Discrimination in Employment Act; the Equal Pay Act of 1963; the California Fair Employment and Housing Act; the California Labor Code; the Fair Labor Standards Act; the Americans with Disabilities Act; and other federal, state and local employment laws.

*See id.* The agreement similarly lists types of claims that are *not* covered by the agreement, again in the context of the parties' employment relationship. *Id.*

- The parties retain their rights "to file a claim with, recover through, or participate in an investigative proceeding of, any federal, state, or local governmental agency, such as the California Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, or the National Labor Relations Board." *Id.*

- The agreement "does not apply to" certain claims related to the parties' employment relationship, such as "Workers' Compensation or Unemployment Insurance claims"; "[c]laims under an employee pension or benefit plan"; "[c]laims covered by an applicable collective bargaining agreement"; and "[c]laims of employees with written employment agreements that contain arbitration provisions covering the claim(s) asserted." *See id.*

Throughout the agreement, there are also other provisions emphasizing that the arbitration provision pertains to the parties' employment relationship.

- As Defendants point out, and as discussed above, the arbitration agreement specifically states that the arbitration will be held "in accordance with the JAMS *Employment* Arbitration Rules." *See id.* at 19 (emphasis added).

- The agreement states that it "shall survive the *employer-employee relationship* between the parties and shall apply to any covered Claim whether or not it arises or

8

1     is asserted during or after termination of *employment*." *Id.* (emphasis added).

3     Plaintiff does not address this language or its potential limitation on the meaning of "all
4  claims or controversies." *See* Dkt. No. 27 at 7–8. But the Court does not interpret contractual
5  provisions in a vacuum. Moreover, "[w]here a contract is susceptible to two interpretations, one
6  which renders it valid and the other which renders it void, a court should select the interpretation
7  that makes the contract valid." *Ramirez*, 16 Cal. 5th at 507 (citing Cal. Civ. Code §§ 1643, 3541).
8  The Court therefore agrees with Defendants' own concession that the arbitration agreement is
9  limited to "all claims or controversies" arising from the parties' employment relationship. As
10 such, it is not overly broad.

       **ii.    Duration**

12    Plaintiff next argues that the agreement is unconscionable because it is of "indefinite"
13 duration. *See* Dkt. No. 27 at 11–12. Specifically, Plaintiff points out that the agreement states that
14 it "shall survive the employer-employee relationship between the parties and shall apply to any
15 covered Claim whether or not it arises or is asserted during or after termination of employment."
16 Dkt. No. 10-2, Ex. B at 19. It may "be modified or revoked only by a document signed by
17 [Plaintiff] and the Company CEO." *Id.*
18    Plaintiff cites a California Court of Appeal case, *Cook v. Univ. of S. California*, 102 Cal.
19 App. 5th 312, 325–26 (Cal. Ct. App. 2024), in which the court upheld the trial court's conclusion
20 that an agreement was unconscionable because it survived indefinitely following the employee's
21 termination. The court in *Cook* did not hold that all contracts that survive the termination of
22 employment are unconscionable, and instead considered the parties' agreement holistically. The
23 court considered the implications of the temporal scope of the agreement in the context of other
24 overbroad provisions. The agreement in *Cook* required the plaintiff to arbitrate all claims against
25 her employer or other entities and individuals related to her employment, regardless of whether
26 her claims arose from her employment. *See id.* at 321–23. As discussed in Section III.B.i. above,
27 the arbitration agreement here is limited to the employment context and so does not have the same
28 broad scope as in *Cook*, which risked requiring arbitration of all claims for all time. Although the

9

1  agreement may last after Plaintiff's employment ends, it is still limited to issues relating to her
2  employment.

### iii. Mutuality

Plaintiff next argues that the arbitration agreement lacks mutuality because it requires Plaintiff to arbitrate claims against third-party entities and individuals other than her employer. *See* Dkt. No. 27 at 11.  The agreement, for example, requires Plaintiff to arbitrate claims against the company, but also its parents, subsidiaries, affiliated entities, employees, clients, and customers.  *See* Dkt. No. 10-2, Ex. B at 18.  These third parties, however, are not signatories to the agreement and thus not required to arbitrate any claims they may have against Plaintiff.  Plaintiff offers an example in which she would have to arbitrate a claim arising from a car accident with an "agent of a plan administrator handling benefits on behalf of the company, even if Plaintiff has never met them and is unaware of their status . . . ." *See* Dkt. No. 27 at 11.  The agent, however, would not be bound to arbitrate any claims against Plaintiff.  *Id.*

Again, Plaintiff relies exclusively on *Cook*, 102 Cal. App. 5th at 326–27, in support of this argument.  But as already explained, the agreement in *Cook* was far broader than the one here.  Under the agreement as conceded by Defendants and construed by the Court, Plaintiff would *not* be required to arbitrate a claim arising from a car accident involving a third-party claims administrator.  And Plaintiff has not cited a case in which an arbitration agreement that was limited to the employment context was found substantively unconscionable because it included third-party beneficiaries.

### iv. Cost Allocation

Relatedly, Plaintiff contends that the agreement is substantively unconscionable because it is not clear who would be responsible for paying arbitration costs for claims not arising from Plaintiff's employment.  *See* Dkt. No. 27 at 12.  But the Court has already found that the agreement is limited to claims arising from Plaintiff's employment.

### v. Bellwether Procedures

Plaintiff argues that the agreement is also substantively unconscionable because it imposes "bellwether procedures," which only allow 10 "substantially similar" cases to proceed in

arbitration at a time. *See* Dkt. No. 27 at 8–11 (citing Dkt. No. 10-2, Ex. B at 20). When there are more than 10 cases pending with "substantially similar or overlapping allegations of fact or law":

> [N]o more than 10 cases will be active at any one time. All remaining cases will be stayed, with the statute of limitations tolled. As soon as one of the original active cases is resolved (by decision, settlement, or otherwise), a stayed arbitration shall replace it on the list of 10 active cases. Except as provided below, cases shall be placed on or moved to the active list in the order demands for arbitration are first received. Until a case is on or is moved to the list of 10 active cases, the sum the Employee paid to initiate a case shall be refunded, and the Company shall have no obligation to pay any JAMS or arbitrator fees.

*See* Dkt. No. 10-2, Ex. B at 20. The agreement provides a process for an employee to claim "unusual hardship from any delay pursuant to the bellwether procedure" such that his or her case may be placed on the active list of 10 cases. *See id.*

      Plaintiff points out that even with this mechanism for claiming "unusual hardship," she may face an indefinite and unavoidable delay in the adjudication of her case. *See* Dkt. No. 27 at 9–10. And any upside from the bellwether procedures inures to the benefit of Defendants alone. *Id.* As such, Plaintiff urges that it is unduly harsh, unfairly one-sided and lacking mutuality, and would deter employees from enforcing their rights. *Id.* It does not seem farfetched, for example, that there could be far more than 10 "substantially similar" cases if the claims arise from a company-wide policy (such as undercounting travel time as alleged here). In the complaint, Plaintiff alleges that there are over 500 individuals who were subjected to Defendants' policies and practices regarding travel time during the relevant statute of limitations. *See* Compl. at ¶ 11. Defendants even point out other recent cases in which the plaintiffs signed identical arbitration agreements and are now arbitrating their claims against Defendant SAS. *See* Dkt. No. 10 at 9. Plaintiff, for her part, estimates that there have been at least five cases against Defendant SAS compelled to arbitration since 2023. *See* Dkt. No. 27 at 10.

      Defendants offer little in response to Plaintiff's concerns. They attempt to fashion a dispositive test for whether bellwether procedures are unconscionable by citing to some factors that the district court considered in *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1040–44)

11

(N.D. Cal. 2022). Defendants highlight, for example, that under the provisions here, the statute of limitations is tolled, a stayed arbitration will proceed as soon as one (not all) of the active ten arbitrations is resolved, and an employee can petition JAMS to prioritize his or her case based on hardship. *See* Dkt. No. 30 at 16–17. But *MacClelland* did not purport to establish a universal test for analyzing bellwether procedures, and even if it did, such a test would not be binding on this Court. The Court finds that under the circumstances of this case, it is enough for purposes of the unconscionability inquiry that the bellwether procedures would indefinitely delay the resolution of Plaintiff's claims.

As discussed above, only ten "substantially similar" cases may proceed at a time. And unlike in other cases, there is no opt out procedure or default target for the amount of time any single arbitration may take. *Cf. McGrath v. DoorDash, Inc.*, No. 19-CV-05279-EMC, 2020 WL 6526129, at *10–11, & n.7 (N.D. Cal. Nov. 5, 2020) (noting that initial test cases were to be resolved within 120 days of the pre-hearing conference and a claimant could choose to opt out of the arbitration process and go back to court). Despite Defendants' suggestion otherwise, the mechanism for claiming an "unusual hardship" does not mitigate concerns about delay. Rather, as Plaintiff points out, the "hardship" procedures cut both ways: Plaintiff's arbitration, even if initially allowed to proceed, could be leapfrogged and stayed at any time based on someone else's hardship. Tolling the statute of limitations, though certainly valuable in preserving some of an employee's rights, does not ensure the timely resolution of his or her claims.

The agreement's bellwether protocol also differs significantly from the JAMS Mass Arbitration Procedures and Guidelines.[4] The JAMS mass arbitration rules define "a Mass Arbitration" as "75 or more similar Demands for Arbitration . . . filed against the same Party or related Parties by individual Claimants represented by either the same law firm or law firms acting in coordination." The rules include procedures to streamline the process for mass arbitrations, including the appointment of a process administrator. Notably, these rules do not require "test cases" or preclude other arbitrations from proceeding in the meantime. The JAMS mass

---

[4] *See* JAMS Mass Arbitration Procedures & Guidelines, available at https://www.jamsadr.com/mass-arbitration-procedures (last visited Dec. 12, 2025).

arbitration rules thus appear designed to enhance efficiency for all participants in the arbitration, whereas the arbitration agreement here would only benefit Defendants, while potentially substantially delaying the resolution of individual claims like Plaintiff's, with no recourse. There is simply no adequate justification for forcing someone in Plaintiff's position to wait an indefinite amount of time for other people's claims to be resolved. It is "one of the basic principles of our legal system—justice delayed is justice denied." *Dietrich v. Boeing Co.*, 14 F.4th 1089, 1095 (9th Cir. 2021). The Court finds that the bellwether procedures are thus substantively unconscionable.

### vi. Representative PAGA Claims

Lastly, Plaintiff argues that the arbitration agreement is substantively unconscionable because it prohibits Plaintiff from participating in and recovering from all collective proceedings, and does not include an exception for representative PAGA proceedings. *See* Dkt. No. 27 at 13. The agreement explicitly states that "[b]oth you and Company waive the right to bring, maintain, participate in, or receive money from any class or collective proceeding." *See* Dkt. No. 10-2, Ex. B at 19. Plaintiff acknowledges that she has not yet alleged a PAGA claim here. *See* Dkt. No. 27 at 13. But the language of the agreement would appear to preclude Plaintiff from bringing a representative PAGA case in the future or benefiting from any of the existing PAGA proceedings, even outside of arbitration.[5] Defendants nevertheless assert that "[t]he Agreement does not prohibit representative PAGA claims . . . ." *See* Dkt. No. 30 at 17. This is inconsistent with the plain language of the agreement, and Defendants offer no further explanation. As the California Supreme Court has repeatedly stated, "an employee's right to bring a PAGA action is unwaivable." *See Iskanian v. CLS Transportation Los Angeles LLC*, 59 Cal. 4th 348, 383 (Cal. 2014). As such, a provision in an arbitration agreement requiring an employee to waive such rights "is against public policy and may not be enforced." *Id.* Accordingly, the waiver provision is substantively unconscionable to the extent it bars Plaintiff from bringing or benefiting from any representative PAGA claims.

//

---

[5] In a footnote, Defendants state that there are currently multiple PAGA cases that were filed and pending before Plaintiff filed her complaint. *See* Dkt. No. 30 at 17, n.12.

**C.     Severability**

That Plaintiff has identified some unconscionable provisions does not necessarily render the arbitration agreement unenforceable. The Court must analyze whether the unconscionable parts of the arbitration provision should be severed. In determining whether to sever unconscionable provisions, the Court considers whether the agreement is "permeated" by unconscionability. As the California Supreme Court has explained:

> If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate.

*See Ramirez*, 16 Cal. 5th at 545.

Here, the Court finds that the bellwether procedures and representative PAGA waiver can both be readily severed without undermining the main purpose of the contract. The arbitration agreement explicitly contains a severability provision, stating:

> If any part of this Agreement is found to be void or unenforceable, that part will be severed and eliminated, and the rest of this Agreement will remain in full force, so that the parties' mutual desire to create a binding agreement to arbitrate will be fulfilled.

*See* Dkt. No. 10-2, Ex. B at 20. The bellwether provision similarly contains a limitation that its procedures only apply "[t]o the maximum extent permitted by law." *See* Dkt. No. 10-2, Ex. B at 20. Despite Plaintiff's urging otherwise, Dkt. No. 27 at 14–15, the Court does not find that the inclusion of these provisions was intended to force Plaintiff to participate in an inferior forum. The parties' intent to arbitrate claims arising from Plaintiff's employment remains fully in effect even without (1) the bellwether procedures and (2) representative PAGA waiver. Put another way, Plaintiff is not subject to the bellwether procedures, nor is she precluded from participating in or benefiting from a representative PAGA claim outside of arbitration. With the severance of these provisions, the Court finds that the agreement is not unenforceable on the basis of unconscionability.

## IV. CONCLUSION

The Court **GRANTS** the motion to compel arbitration, and the case is **STAYED** pending resolution through arbitration of Plaintiff's individual claims.[6] Dkt. No. 10. The parties shall file status reports every 120 days regarding the status of the arbitration, and shall notify the Court within 48 hours of a final decision.

**IT IS SO ORDERED.**

Dated:   12/12/2025

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[6] As already noted, this decision is without prejudice to Plaintiff asserting a representative PAGA claim outside of arbitration.

15